**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

District of Maine

Case number (*If known*): _____ Chapter ___11___

☐ Check if this is an
amended filing

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy     04/25

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.**

| | | |
|---|---|---|
| 1. **Debtor's name** | Fork Food Lab | |

2. **All other names debtor used in the last 8 years**

   Include any assumed names, trade names, and *doing business as* names

   Fork Food Lab 2.0
   The Sustainability Lab

3. **Debtor's federal Employer Identification Number** (EIN)

   45-4116596

4. **Debtor's address**

   **Principal place of business**

   95 Darling Avenue
   Number      Street

   South Portland        ME    04106
   City                State    ZIP Code

   Cumberland County
   County

   **Mailing address, if different from principal place of business**

   Number      Street

   P.O. Box

   City            State    ZIP Code

   **Location of principal assets, if different from principal place of business**

   Number      Street

   City            State    ZIP Code

5. **Debtor's website** (URL)    https://www.forkfoodlab.com/

6. **Type of debtor**

   ☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
   ☐ Partnership (excluding  LLP)
   ☐ Other. Specify: _____

Debtor    Fork Food Lab _____     Case number *(if known)*_____
          Name

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☑ None of the above

B. *Check all that apply:*

☑ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor.
   See http://www.naics.com/search/ .

   7223____

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7

☐ Chapter 9

☑ Chapter 11. *Check **all** that apply*:

☑ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,424,000 (amount subject to adjustment on 4/01/28 and every 3 years after that).

☑ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☑ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☑ No

☐ Yes.  District _____  When _____  Case number _____
                                        MM / DD / YYYY

        District _____  When _____  Case number _____
                                        MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☑ No

☐ Yes.  Debtor _____  Relationship _____

        District _____  When _____
                                                  MM / DD / YYYY

        Case number, if known _____

| Debtor | Fork Food Lab | Case number (*if known*)_____ |
|---|---|---|
| | Name | |

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?**_____
                            Number          Street

_____

_____  _____  _____
City                                     State    ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact name      _____

Phone             _____

---

**Statistical and administrative information**

**13. Debtor's estimation of available funds**

*Check one:*

☑ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☑ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

**15. Estimated assets**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☑ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

Debtor  **Fork Food Lab**

Name

Case number (if known)_____

| 16. Estimated liabilities | ☐ $0-$50,000 | ☑ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|---|
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

### Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __04/20/2026__
MM / DD / YYYY

**✗** _____          Jason Mills

Signature of authorized representative of debtor          Printed name

Title **Chief Restructuring Officer**

**18. Signature of attorney**

**✗** _____          Date __04/20/2026__

Signature of attorney for debtor                    MM / DD / YYYY

Adam R. Prescott
Printed name

Bernstein Shur Sawyer & Nelson, P.A.
Firm name

100 Middle Street P.O. Box 9729
Number      Street

Portland                              ME      04101
City                                  State   ZIP Code

2077741200                            aprescott@bernsteinshur.com
Contact phone                         Email address

6033                                  ME
Bar number                            State

---

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case and this filing:</strong></td></tr>
</table>

Debtor Name ___Fork Food Lab_____

United States Bankruptcy Court for the: **District of Maine** _____

Case number (*if known*): _____

## Official Form 202

## Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

❑ *Schedule A/B: Assets—Real and Personal Property* (Official Form 206A/B)

❑ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

❑ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

❑ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

❑ *Schedule H: Codebtors* (Official Form 206H)

❑ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

❑ Amended *Schedule* ____

☑ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

❑ Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   04/20/2026  ✗ _____
         MM / DD / YYYY           Signature of individual signing on behalf of debtor

         Jason Mills _____
         Printed name

         Chief Restructuring Officer _____
         Position or relationship to debtor

Official Form 202          Declaration Under Penalty of Perjury for Non-Individual Debtors

**Fill in this information to identify the case:**

Debtor name ___Fork Food Lab_____

United States Bankruptcy Court for the:__District of Maine_____

Case number (If known): _____

☐ Check if this is an amended filing

## Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

**12/15**

**A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider,* as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.**

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Asa Gorman Builders 586 Sawyer Street South Portland, ME, 04106 | kmcdonald@mpmlaw.com; info@asagorman.com; asa.gorman@gmail.com | Services | | | | 668,809.14 |
| 2 | U.S. Small Business Administration 409 Third Street SW 7th Floor Washington, DC, 20416 | Juan.romero-sanchez@sba.gov; Allie.Yang-Green2@usdoj.gov; CESC@sba.gov; lending@sba.gov; | Unsecured Loan Repayments | Disputed | | | 496,883.00 |
| 3 | Norway Savings Bank P.O. Box 347 Norway, ME, 04268 | ashub@preti.com; cthomas@norwaysavingsbank.com; | Unsecured Loan Repayments | | | | 354,843.00 |
| 4 | City of South Portland P.O. Box 9422 South Portland, ME, 04106 | finance@southportland.gov; | Services | | | | 32,785.40 |
| 5 | Elan Financial Services P.O. Box 790408 St. Louis, MO, 63179-0408 | | Credit Card Debt | | | | 31,073.62 |
| 6 | Central Maine Power P.O. Box 847810 Boston, MA, 02284-7810 | CMPBankruptcy@cmpco.com; collections@cmpco.com; | Utility Services | | | | 9,561.33 |
| 7 | Maine Farm & Sea Cooperative P.O. Box 8714 Portland, ME, 04104 | source@mainefarmandsea.coop | Services | | | | 9,191.37 |
| 8 | Plucked Fresh Salsa 987 Riverside Street Portland, ME, 04103 | contact@pluckedsalsa.com | Services | | | | 7,000.00 |

Debtor ___Fork Food Lab_____  Case number (*if known*)_____
      Name

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim. If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 9 | The Kitchen Network, LLC 78 Boston Rock Road Melrose, MA, 02176 | ian@kitchennetworking.com; | Services | | | | 6,762.50 |
| 10 | ERC Specialists, LLC 560 E. Timpanogos Circle Orem, UT, 84097 | support@ercspecialists.com; | Services | | | | 4,063.90 |
| 11 | Portland Paper Products, LLC 12 Rice Street Unit 4 Portland, ME, 04103 | info@portlandpaperproducts.com | Services | | | | 3,339.67 |
| 12 | Global Village LLC 2 DeLorme Drive Yarmouth, ME, 04096 | | Services | | | | 3,000.00 |
| 13 | Western MA Food Processing Center 324 Wells Street Greenfield, MA, 01301 | katem@fccdc.org; | Services | | | | 2,932.50 |
| 14 | Cintas 6800 Cintas Blvd Mason, OH, 45040 | customerservice@cintas.com; | Services | | | | 2,656.00 |
| 15 | Healthy Communities of the Capital Area 105 Second Street Suite 2B Hallowell, ME, 04347 | s.johnson@hccame.org; | Services | | | | 2,500.00 |
| 16 | Farms for Food Equity 21 Wells Road Cape Elizabeth, ME, 04107 | penny@farmsforfoodequity.org | Services | | | | 2,454.87 |
| 17 | Knowles Mechanical Inc. 1145 Lewiston Road Litchfield, ME, 04350 | info@knowlesmechanical.com | Services | | | | 2,082.44 |
| 18 | Troiano Waste Services, Inc. P.O. Box 3541 Portland, ME, 04104 | payments@troianowaste.com | Services | | | | 1,035.91 |
| 19 | FirstLight Fiber 340 Cumberland Ave Portland, ME, 04101 | customerservice@firstlight.net; billing@firstlight.net; | Utility Services | | | | 937.31 |
| 20 | Quick Drain Services 20600 Emerald Parkway Cleveland, OH, 44135 | info@quickdrainmaine.com; | Services | | | | 435.00 |

Official Form 204        **Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims**        page 2

# Statement of Financial Position

Fork Food Lab

As of Dec 31, 2025

|  | Total |
|---|---|
| **Assets** | |
| Current Assets | |
| Bank Accounts | |
| 1020 MSB Fork Operating Chx xx7810 | 0.00 |
| 1025 Norway Operating Account 0843 | 5,901.79 |
| 1040 Fork Cash Drawer | 200.00 |
| 1045 Norway Payroll Account xx4476 | 22,147.15 |
| 1046 NSB xx4182 ATOF | 73.93 |
| 1047 NSB Lab Grant Acct 0857 | 9.00 |
| **Total for Bank Accounts** | **$28,331.87** |
| Accounts Receivable | |
| 1100 Accounts Receivable (A/R) | 31,451.77 |
| **Total for Accounts Receivable** | **$31,451.77** |
| Other Current Assets | |
| 1030 Walden Mutual Bank | 1,424.94 |
| 1210 Fork ATOF Inventory | 2,340.40 |
| 1310 Prepaid Expenses | 0.00 |
| 1350 Undeposited Funds | 5,888.65 |
| 1355 NSB GAL Escrow | 0.00 |
| 1361 Construction in Progress | 0.00 |
| Uncategorized Asset | 0.00 |
| **Total for Other Current Assets** | **$9,653.99** |
| **Total for Current Assets** | **$69,437.63** |
| Fixed Assets | |
| 1410 SLab Computers & Digital Equip | 0.00 |
| 1415 Accumulated Depreciation - SLab | 0.00 |
| 1420 Fork Machinery & Equipment | 901,072.65 |
| 1425 Accumulated Depreciation - Fork Food | -177,200.10 |
| 1621 Deposits Restaurant Equipment Paradise | 0.00 |
| **Total for Fixed Assets** | **$723,872.55** |

Accrual Basis  Saturday, April 18, 2026 07:30 PM GMT-04:00

# Statement of Financial Position

Fork Food Lab
As of Dec 31, 2025

| | Total |
|---|---|
| Other Assets | |
| 1360 Investment in Fork Food Hub | 2,882,620.66 |
| 1365 Investment in Delorme Cafe | 5,146.00 |
| 1610 Fork Security Deposits | 1,004.81 |
| **Total for Other Assets** | **$2,888,771.47** |
| **Total for Assets** | **$3,682,081.65** |
| Liabilities and Equity | |
| Liabilities | |
| Current Liabilities | |
| Accounts Payable | |
| 2110 Accounts Payable | 1,457,531.32 |
| **Total for Accounts Payable** | **$1,457,531.32** |
| Credit Cards | |
| 2155 Credit Card - Elan Financial Services | 31,073.62 |
| 2157 Credit Card TD Bank | 12,159.23 |
| **Total for Credit Cards** | **$43,232.85** |
| Other Current Liabilities | |
| 2115 Due to Hub | 555,281.83 |
| 2118 Accrued GAL Interest and Fees | 106,617.54 |
| 2120 Member Deposits | 82.21 |
| 2125 Surplus business asset deposit | 0.00 |
| 2150 Accrued Payroll | 25,200.09 |
| 2159 KeyCredit | 0.00 |
| 2240 Maine Department of Revenue Payable | 0.00 |
| 2250 Sales Tax Payable | 0.00 |
| 2310 Machias Line of Credit xx3635 | 33,593.11 |
| 2311 Machias Savings Loan | 0.00 |
| 2320 Paycheck Protection Program | 0.00 |
| 2325 Norway Savings Bank GAL | 329,755.00 |
| 2422 State of Maine Grant | 56,721.50 |
| 2423 USDA MPIRG Conditional Grant | 50,893.96 |
| 2542 Due to Corrine Tompkins | 18,600.00 |
| Do not Use | 0.00 |
| **Total for Other Current Liabilities** | **$1,176,745.24** |
| **Total for Current Liabilities** | **$2,677,509.41** |

Accrual Basis  Saturday, April 18, 2026 07:30 PM GMT-04:00

# Statement of Financial Position

Fork Food Lab

As of Dec 31, 2025

|  | Total |
|---|---|
| Long-term Liabilities | |
| 2335 CFNE Bridge Loan | 784,924.36 |
| 2336 Sewall Loan | 778,870.89 |
| 2340 2340 Northstar Lease | 9,865.17 |
| 2341 Time Payment Lease | 13,985.36 |
| 2421 Due to J. Alfond | 29,000.00 |
| 2500 Notes Payable | |
| 2330 EIDL | 498,450.75 |
| 2510 Discover Bank | 0.00 |
| 2520 Due to B. Seretta | 0.00 |
| 2530 Note Payable Lamont | 0.00 |
| 2540 Note Payable Sleeper | 0.00 |
| 2545 Note Payable Forq LLC | 0.00 |
| 2547 Loans From Board | $119,800.00 |
| 2548 SoFi Loan | 0.00 |
| Total for 2547 Loans From Board | $119,800.00 |
| Total for 2500 Notes Payable | $618,250.75 |
| Total for Long-term Liabilities | $2,234,896.53 |
| Total for Liabilities | $4,912,405.94 |
| Equity | |
| 30000 Opening Balance Equity | 0.00 |
| 3000*OE Opening Balance Equity {4} | 0.00 |
| 32000 Retained Earnings | -177,888.00 |
| Net Income | -1,052,436.29 |
| Total for Equity | -$1,230,324.29 |
| Total for Liabilities and Equity | $3,682,081.65 |

3/3

# Statement of Cash Flows

Fork Food Lab
January-December, 2025

| Full name | Total |
| --- | ---: |
| **OPERATING ACTIVITIES** | |
| Net Income | -1,052,436.29 |
| Adjustments to reconcile Net Income to Net Cash provided by operations: | |
| 1030 Walden Mutual Bank | 4,965.10 |
| 1100 Accounts Receivable (A/R) | 82,070.13 |
| 1310 Prepaid Expenses | -350.00 |
| 1361 Construction in Progress | 428,560.99 |
| 1415 Accumulated Depreciation - SLab | -1,189.00 |
| 1425 Accumulated Depreciation - Fork Food | 4,135.86 |
| 2110 Accounts Payable | 595,605.38 |
| 2118 Accrued GAL Interest and Fees | 45,420.67 |
| 2125 Surplus business asset deposit | -4,587.00 |
| 2150 Accrued Payroll | 25,200.09 |
| 2155 Credit Card - Elan Financial Services | 1,253.61 |
| 2157 Credit Card TD Bank | 6,669.35 |
| 2159 KeyCredit | 505.28 |
| 2240 Maine Department of Revenue Payable | -660.37 |
| 2250 Sales Tax Payable | 4,879.75 |
| 2310 Machias Line of Credit xx3635 | -8,776.02 |
| 2311 Machias Savings Loan | -493.49 |
| 2422 State of Maine Grant | 56,721.50 |
| 2423 USDA MPIRG Conditional Grant | 50,893.96 |
| 2542 Due to Corrine Tompkins | 18,600.00 |
| Uncategorized Asset | -182.20 |
| **Total for Adjustments to reconcile Net Income to Net Cash provided by operations:** | **$1,309,243.59** |
| **Net cash provided by operating activities** | **$256,807.30** |
| **INVESTING ACTIVITIES** | |
| 1360 Investment in Fork Food Hub | -418,420.44 |
| 1410 SLab Computers & Digital Equip | 4,148.90 |
| 1420 Fork Machinery & Equipment | 25,879.82 |
| **Net cash provided by investing activities** | **-$388,391.72** |
| **FINANCING ACTIVITIES** | |
| 2330 Notes Payable:EIDL | -1,949.25 |
| 2340 2340 Northstar Lease | -5,110.31 |
| 2341 Time Payment Lease | -11,526.62 |
| 2421 Due to J. Alfond | 29,000.00 |
| 2510 Notes Payable:Discover Bank | -352.86 |

Saturday, April 18, 2026 07:33 PM GMT-04:00

# Statement of Cash Flows

Fork Food Lab
January-December, 2025

| Full name | Total |
|---|---|
| 2530 Notes Payable:Note Payable Lamont | -1,468.85 |
| 2540 Notes Payable:Note Payable Sleeper | -1,468.85 |
| 2545 Notes Payable:Note Payable Forq LLC | 78,697.12 |
| 2547 Notes Payable:Loans From Board | 10,500.00 |
| 2548 Notes Payable:Loans From Board:SoFi Loan | -16,887.68 |
| 3000*OE Opening Balance Equity {4} | -65,312.80 |
| 32000 Retained Earnings | -25,441.92 |
| **Net cash provided by financing activities** | **-$11,322.02** |
| **NET CASH INCREASE FOR PERIOD** | **-$142,906.44** |
| **Cash at beginning of period** | **$177,126.96** |
| **CASH AT END OF PERIOD** | **$34,220.52** |

Saturday, April 18, 2026 07:33 PM GMT-04:00

# Statement of Activity

Fork Food Lab

January-December, 2025

| | Total |
|---|---|
| **Revenue** | |
| 4000 Contributions | $5,000.00 |
| 4013 Fork Individual/small business | 67,366.81 |
| **Total for 4000 Contributions** | **$72,366.81** |
| 4220 Foundation Grants | |
| 4223 Fork Foundation Grants | 25,000.00 |
| **Total for 4220 Foundation Grants** | **$25,000.00** |
| 4300 Revenue from Governmental Grant | |
| 4321 USDA-21LFPPME1065-00 | 63,356.06 |
| 4326 USDA AMS-23RFSPME1068 | 319,642.28 |
| 4340 Paycheck Protection Program | 120,545.87 |
| **Total for 4300 Revenue from Governmental Grant** | **$503,544.21** |
| 5200 Fork Rev from Programs | |
| 5210 Fork Member Fees | 521,292.51 |
| **Total for 5200 Fork Rev from Programs** | **$521,292.51** |
| 5220 Fork Gross member sales | |
| 5225 ATOF Sales | 129,033.49 |
| 5227 Wholesale sales | -1,542.57 |
| 5230 Fork Special Events & Pop Ups | 814.07 |
| **Total for 5220 Fork Gross member sales** | **$128,304.99** |
| 5240 Gross Sales - Service Income | |
| 5243 Trash/Organics Removal | 0.00 |
| **Total for 5240 Gross Sales - Service Income** | **$0.00** |
| 5244 5244 | 6,000.00 |
| **Total for Revenue** | **$1,256,508.52** |
| **Cost of Goods Sold** | |
| 6000 Cost of Goods Sold | $1,215.40 |
| 6005 ATOF COGS | 114,572.84 |
| 6007 Events & PopUps COGS | 1,576.25 |
| **Total for 6000 Cost of Goods Sold** | **$117,364.49** |
| **Total for Cost of Goods Sold** | **$117,364.49** |
| **Gross Profit** | **$1,139,144.03** |
| **Expenditures** | |
| 7100 Grants, contracts & direct awar | 172,669.35 |

Accrual Basis  Saturday, April 18, 2026 07:31 PM GMT-04:00

# Statement of Activity

Fork Food Lab
January-December, 2025

|  | Total |
|---|---|
| 8175 Interest Paid KeyCredit | 505.28 |
| 8177 Interest Exp GAL | 45,420.67 |
| 8212 Hub rent payment | 694,579.20 |
| 8215 Loss on Disposal | 7,409.30 |
| 8250 Interest on Finance Leases | 5,555.69 |
| 8324 Real Estate Property Tax | 32,785.40 |
| Building - Rent, NNN, Repairs | |
| 8322 Fork Lease Delorme Cafe | 35,482.99 |
| 8325 Fork Building Repair & Maintena | 42,037.27 |
| **Total for Building - Rent, NNN, Repairs** | **$77,520.26** |
| Equipment Rental, Repair & Maintenance | $395.00 |
| 8328 Fork Kitchen Equipment Repair | 5,147.78 |
| 8330 Fork Kitchen Equipment Rental | 3,450.43 |
| 8335 Personal Property Tax | 2,002.82 |
| **Total for Equipment Rental, Repair & Maintenance** | **$10,996.03** |
| Insurance | |
| 8121 Fork Insurance | 19,309.00 |
| **Total for Insurance** | **$19,309.00** |
| Interest Paid | |
| 8151 Interest Paid TD CC | 2,703.46 |
| 8152 Interest Paid Machias CC | 7,768.30 |
| 8154 Interest Paid Sleeper | 7.35 |
| 8155 Interest Paid Lamont | 7.35 |
| 8167 Interest Machias LOC | 4,772.24 |
| 8170 CFNE Interest | 42,760.80 |
| 8171 Interest Sewall Loan | 42,680.69 |
| 8172 8172 SoFi interest | 846.73 |
| 8173 SBA Loan | 22,188.75 |
| **Total for Interest Paid** | **$123,735.67** |
| Kitchen Supplies, Smallwares & Services | |
| 8326 Services/security/fire/ | 30,283.89 |
| 8327 Cleaning & Paper supplies | 52,909.27 |
| 8329 Small Wares & Supplies | 10,267.72 |
| **Total for Kitchen Supplies, Smallwares & Services** | **$93,460.88** |

Accrual Basis  Saturday, April 18, 2026 07:31 PM GMT-04:00

# Statement of Activity

Fork Food Lab

January-December, 2025

| | Total |
|---|---|
| **Licences** | |
| 8430 Fork Licenses | 300.00 |
| Total for Licences | $300.00 |
| **Marketing & Memberships** | |
| 8450 Advertising/Promotional | 729.18 |
| 8452 Fork Memberships | 400.00 |
| Total for Marketing & Memberships | $1,129.18 |
| **Miscellaneous Expense** | 0.00 |
| **Office Supplies, Software & Cloud Services** | |
| 8111 Fork Admin software Subscriptio | 19,440.94 |
| 8117 Fork Office Supplies & Print/Co | 339.60 |
| 8140 Fork POS Platform Fees | 3,170.14 |
| 8142 Fork Bank Charges | 2,265.03 |
| 8145 Office/General Administrative Expenses | 746.42 |
| Total for Office Supplies, Software & Cloud Services | $25,962.13 |
| **Payroll & Benefits** | |
| 7025 Fork Salaries & wages | 413,848.03 |
| 7026 Fork Employee Benefits | 39,420.76 |
| 7027 Fork Payroll Taxes | 139,978.08 |
| 7028 Fork Payroll fees | 7,553.62 |
| Total for Payroll & Benefits | $600,800.49 |
| **Professional Services** | $5,000.00 |
| 6310 Legal and Professional Fees | 46,855.37 |
| Total for Professional Services | $51,855.37 |
| **Travel** | |
| 8131 Fork Travel | 118.86 |
| Total for Travel | $118.86 |
| **Utilities** | |
| 8410 Fork Utilities | 84.32 |
| 8411 Utilities -Electricity | 82,365.75 |
| 8412 Utilities-Gas | 25,776.51 |
| 8413 Utilities-Water | 6,361.51 |
| 8414 Internet & Telephone | 13,894.98 |
| 8415 Storm Water Fee | 5,624.71 |
| Total for Utilities | $134,107.78 |

Accrual Basis  Saturday, April 18, 2026 07:31 PM GMT-04:00

# Statement of Activity

Fork Food Lab

January-December, 2025

|  | Total |
|---|---|
| Web Hosting & Domain Services | |
| 8181 Fork Web Hosting & Domain | 359.92 |
| **Total for Web Hosting & Domain Services** | **$359.92** |
| **Total for Expenditures** | **$2,098,580.46** |
| **Net Operating Revenue** | **-$959,436.43** |
| Other Revenue | |
| 5115 miscellaneous Income | 8,920.10 |
| 5250 95 Darling surplus sales | -2,000.00 |
| **Total for Other Revenue** | **$6,920.10** |
| Other Expenditures | |
| 8210 Depreciation Expense | 99,919.96 |
| **Total for Other Expenditures** | **$99,919.96** |
| **Net Other Revenue** | **-$92,999.86** |
| **Net Revenue** | **-$1,052,436.29** |

4/4

Accrual Basis  Saturday, April 18, 2026 07:31 PM GMT-04:00

| Form **8879-TE** | **IRS E-file Signature Authorization for a Tax Exempt Entity** | OMB No. 1545-0047 |
|---|---|---|
| | For calendar year 2024, or fiscal year beginning _____ , 2024, and ending _____ , 20 __ | **2024** |
| Department of the Treasury Internal Revenue Service | **Do not send to the IRS. Keep for your records.** Go to *www.irs.gov/Form8879TE* for the latest information. | |

| Name of filer | EIN or SSN |
|---|---|
| **Fork Food Lab** | **45-4116596** |

Name and title of officer or person subject to tax

**William Seretta, Executive Director**

## Part I   Type of Return and Return Information

Check the box for the return for which you are using this Form 8879-TE and enter the applicable amount, if any, from the return. Form 8038-CP and Form 5330 filers may enter dollars and cents. For all other forms, enter whole dollars only. If you check the box on line **1a, 2a, 3a, 4a, 5a, 6a, 7a, 8a, 9a,** or **10a** below, and the amount on that line for the return being filed with this form was blank, then leave line **1b, 2b, 3b, 4b, 5b, 6b, 7b, 8b, 9b,** or **10b,** whichever is applicable, blank (do not enter -0-). But, if you entered -0- on the return, then enter -0- on the applicable line below. **Do not** complete more than one line in Part I.

| | | | |
|---|---|---|---|
| **1a** | **Form 990** check here . . . . . [x] | **b** **Total revenue,** if any (Form 990, Part VIII, column (A), line 12) . . . . . . | **1b** 1,625,899 |
| **2a** | **Form 990-EZ** check here . . . [ ] | **b** **Total revenue,** if any (Form 990-EZ, line 9) . . . . . . . . . . . . . . . | **2b** _____ |
| **3a** | **Form 1120-POL** check here . . [ ] | **b** **Total tax** (Form 1120-POL, line 22) . . . . . . . . . . . . . . . . . . | **3b** _____ |
| **4a** | **Form 990-PF** check here . . . [ ] | **b** **Tax based on investment income** (Form 990-PF, Part V, line 5) . . . . . | **4b** _____ |
| **5a** | **Form 8868** check here . . . . [ ] | **b** **Balance due** (Form 8868, line 3c) . . . . . . . . . . . . . . . . . . | **5b** _____ |
| **6a** | **Form 990-T** check here . . . . [ ] | **b** **Total tax** (Form 990-T, Part III, line 4) . . . . . . . . . . . . . . . | **6b** _____ |
| **7a** | **Form 4720** check here . . . . [ ] | **b** **Total tax** (Form 4720, Part III, line 1) . . . . . . . . . . . . . . . | **7b** _____ |
| **8a** | **Form 5227** check here . . . . [ ] | **b** **FMV of assets at end of tax year** (Form 5227, Item D) . . . . . . . . | **8b** _____ |
| **9a** | **Form 5330** check here . . . . [ ] | **b** **Tax due** (Form 5330, Part II, line 19) . . . . . . . . . . . . . . . . | **9b** _____ |
| **10a** | **Form 8038-CP** check here . . . [ ] | **b** **Amount of credit payment requested** (Form 8038-CP, Part III, line 22)  .  | **10b** _____ |

## Part II   Declaration and Signature Authorization of Officer or Person Subject to Tax

Under penalties of perjury, I declare that [✓] I am an officer of the above entity or [ ] I am a person subject to tax with respect to (name of entity) _____ , (EIN) _____ and that I have examined a copy of the 2024 electronic return and accompanying schedules and statements, and, to the best of my knowledge and belief, they are true, correct, and complete. I further declare that the amount in Part I above is the amount shown on the copy of the electronic return. I consent to allow my intermediate service provider, transmitter, or electronic return originator (ERO) to send the return to the IRS and to receive from the IRS **(a)** an acknowledgement of receipt or reason for rejection of the transmission, **(b)** the reason for any delay in processing the return or refund, and **(c)** the date of any refund. If applicable, I authorize the U.S. Treasury and its designated Financial Agent to initiate an electronic funds withdrawal (direct debit) entry to the financial institution account indicated in the tax preparation software for payment of the federal taxes owed on this return, and the financial institution to debit the entry to this account. To revoke a payment, I must contact the U.S. Treasury Financial Agent at 1-888-353-4537 no later than 2 business days prior to the payment (settlement) date. I also authorize the financial institutions involved in the processing of the electronic payment of taxes to receive confidential information necessary to answer inquiries and resolve issues related to the payment. I have selected a personal identification number (PIN) as my signature for the electronic return and, if applicable, the consent to electronic funds withdrawal.

**PIN: check one box only**

[x] I authorize **PETER J HALL CPA LLC** to enter my PIN **49732** as my signature

ERO firm name _____   Enter five numbers, but do not enter all zeros

on the tax year 2024 electronically filed return. If I have indicated within this return that a copy of the return is being filed with a state agency(ies) regulating charities as part of the IRS Fed/State program, I also authorize the aforementioned ERO to enter my PIN on the return's disclosure consent screen.

[ ] As an officer or person subject to tax with respect to the entity, I will enter my PIN as my signature on the tax year 2024 electronically filed return. If I have indicated within this return that a copy of the return is being filed with a state agency(ies) regulating charities as part of the IRS Fed/State program, I will enter my PIN on the return's disclosure consent screen.

Signature of officer or person subject to tax *William J Seretta*   Date **11-17-2025**

## Part III   Certification and Authentication

**ERO's EFIN/PIN.** Enter your six-digit electronic filing identification number (EFIN) followed by your five-digit self-selected PIN.    **012159   04110**

Do not enter all zeros

I certify that the above numeric entry is my PIN, which is my signature on the 2024 electronically filed return indicated above. I confirm that I am submitting this return in accordance with the requirements of **Pub. 4163,** Modernized e-File (MeF) Information for Authorized IRS e-file Providers for Business Returns.

ERO's signature *Peter J. Hall CPA*   Date **11-17-2025**

**ERO Must Retain This Form - See Instructions**
**Do Not Submit This Form to the IRS Unless Requested To Do So**

**For Privacy Act and Paperwork Reduction Act Notice, see the instructions.**    Form **8879-TE** (2024)

EEA

| Form **990** | **Return of Organization Exempt From Income Tax** | OMB No. 1545-0047 |
|---|---|---|
| | Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations) | **2024** |
| Department of the Treasury Internal Revenue Service | Do not enter social security numbers on this form as it may be made public. **Go to** *www.irs.gov/Form990* **for instructions and the latest information.** | **Open to Public Inspection** |

**A** For the 2024 calendar year, or tax year beginning _____ , 2024, and ending _____ , 20 ___

| B Check if applicable: | C Name of organization **Fork Food Lab** | D Employer identification number |
|---|---|---|
| ☐ Address change | Doing business as | 45-4116596 |
| ☐ Name change | Number and street (or P.O. box if mail is not delivered to street address)  **95 Darling Avenue**   Room/suite | E Telephone number **(207)558-0881** |
| ☐ Initial return | | |
| ☐ Final return/terminated | City or town, state or province, country, and ZIP or foreign postal code | G Gross receipts |
| ☐ Amended return | **South Portland, ME 04106** | $ **1,641,684** |
| ☐ Application pending | F Name and address of principal officer: | H(a) Is this a group return for subordinates? ☐ Yes ☒ No |
| | | H(b) Are all subordinates included? ☐ Yes ☐ No |

**I** Tax-exempt status: ☒ 501(c)(3) ☐ 501(c) ( ___ ) (insert no.) ☐ 4947(a)(1) or ☐ 527   If "No," attach a list. See instructions

**J** Website: **WWW.FORKFOODLAB.COM**   H(c) Group exemption number _____

**K** Form of organization: ☒ Corporation ☐ Trust ☐ Association ☐ Other _____   **L** Year of formation: **2011**   **M** State of legal domicile: **ME**

## Part I  Summary

**Activities & Governance**

1 Briefly describe the organization's mission or most significant activities: **Fork Food Lab is a nonprofit food business incubator and shared commercial kitchen focused on growing the local food economy. We support the growth of sustainable Maine-based businesses by providing entrepreneurs with work space, equipment, and other resources.**

2 Check this box ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets.

| | | | |
|---|---|---|---|
| 3 | Number of voting members of the governing body (Part VI, line 1a) | **3** | 8 |
| 4 | Number of independent voting members of the governing body (Part VI, line 1b) | **4** | 8 |
| 5 | Total number of individuals employed in calendar year 2024 (Part V, line 2a) | **5** | 9 |
| 6 | Total number of volunteers (estimate if necessary) | **6** | 15 |
| 7a | Total unrelated business revenue from Part VIII, column (C), line 12 | **7a** | 0 |
| b | Net unrelated business taxable income from Form 990-T, Part I, line 11 | **7b** | 0 |

**Revenue**

| | | Prior Year | Current Year |
|---|---|---|---|
| 8 | Contributions and grants (Part VIII, line 1h) | 865,740 | 1,209,728 |
| 9 | Program service revenue (Part VIII, line 2g) | 333,855 | 410,350 |
| 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d) | 71,016 | 0 |
| 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 7,228 | 5,821 |
| 12 | Total revenue - add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 1,277,839 | 1,625,899 |

**Expenses**

| | | Prior Year | Current Year |
|---|---|---|---|
| 13 | Grants and similar amounts paid (Part IX, column (A), lines 1-3) | | 70,670 |
| 14 | Benefits paid to or for members (Part IX, column (A), line 4) | | 0 |
| 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5-10) | 415,045 | 445,890 |
| 16a | Professional fundraising fees (Part IX, column (A), line 11e) | 4,913 | 0 |
| b | Total fundraising expenses (Part IX, column (D), line 25) ___ 54,705 | | |
| 17 | Other expenses (Part IX, column (A), lines 11a-11d, 11f-24e) | 556,755 | 1,032,637 |
| 18 | Total expenses. Add lines 13-17 (must equal Part IX, column (A), line 25) | 976,713 | 1,549,197 |
| 19 | Revenue less expenses. Subtract line 18 from line 12 | 301,126 | 76,702 |

**Net Assets or Fund Balances**

| | | Beginning of Current Year | End of Year |
|---|---|---|---|
| 20 | Total assets (Part X, line 16) | 3,318,541 | 3,942,498 |
| 21 | Total liabilities (Part X, line 26) | 3,514,564 | 4,120,386 |
| 22 | Net assets or fund balances. Subtract line 21 from line 20 | (196,023) | (177,888) |

## Part II  Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| Sign Here | **William Seretta** Signature of officer | Date |
|---|---|---|
| | **William Seretta, Executive Director** Type or print name and title | |

| Paid Preparer Use Only | Preparer's name **PETER J HALL** | Preparer's signature | Date **11-17-2025** | Check ☐ if self-employed | PTIN **P00444048** |
|---|---|---|---|---|---|
| | Firm's name **PETER J HALL CPA LLC** | | | Firm's EIN | |
| | Firm's address **439 PREBLE STREET South Portland ME 04106** | | | Phone no. **207-415-0920** | |

May the IRS discuss this return with the preparer shown above? See instructions ........ ☒ Yes ☐ No

**For Paperwork Reduction Act Notice, see the separate instructions.**   Form **990** (2024)

EEA

Form 990 (2024)   **Fork Food Lab**                                                45-4116596          Page **2**

| Part III | Statement of Program Service Accomplishments |
|---|---|

Check if Schedule O contains a response or note to any line in this Part III  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . □

**1**   Briefly describe the organization's mission:

Fork Food Lab is  a nonprofit food business incubator and shared commercial kitchen focused on growing the local food economy. We support the growth of sustainable Maine-based businesses by providing entrepreneurs with work space, equipment, and other resources.

**2**   Did the organization undertake any significant program services during the year which were not listed on the prior Form 990 or 990-EZ?  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  □ Yes  ☒ No

If "Yes," describe these new services on Schedule O.

**3**   Did the organization cease conducting, or make significant changes in how it conducts, any program services?  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  □ Yes  ☒ No

If "Yes," describe these changes on Schedule O.

**4**   Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and revenue, if any, for each program service reported.

**4a**   (Code: _____ ) (Expenses $ _____1,196,381 including grants of  $ _____70,670 ) (Revenue  $ _____410,350 )

Fork Food Lab supported the establishment and growth of over 60 food businesses in 2024. Sixty percent are women-founded and owned. Twenty percent are BIPOC. Most member businesses purchase part or all of their ingredients from local producers.

**4b**   (Code: _____ ) (Expenses $ _____ including grants of  $ _____ ) (Revenue  $ _____ )

**4c**   (Code: _____ ) (Expenses $ _____ including grants of  $ _____ ) (Revenue  $ _____ )

**4d**   Other program services (Describe on Schedule O.)

(Expenses  $ _____ including grants of  $ _____ ) (Revenue  $ _____ )

**4e**   Total program service expenses ▶ _____1,196,381

EEA                                                                         Form **990** (2024)

Client Copy

Form 990 (2024)   **Fork Food Lab**                                                                45-4116596      Page **3**

| **Part IV** | **Checklist of Required Schedules** | | | |
|---|---|---|---|---|

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes,"* *complete Schedule A* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **1** | X | |
| **2** | Is the organization required to complete Schedule B, Schedule of Contributors? See instructions . . . . . . . . . . . . . | **2** | X | |
| **3** | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* . . . . . . . . . . . . . . . . . . . . . . . . . . | **3** | | X |
| **4** | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* . . . . . . . . . . . . . . . . . . | **4** | | X |
| **5** | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Rev. Proc. 98-19? *If "Yes," complete Schedule C, Part III* . . . . . . . . . . | **5** | | X |
| **6** | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D, Part I* . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **6** | | X |
| **7** | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* . . . . . . . . . | **7** | | X |
| **8** | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D, Part III* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **8** | | X |
| **9** | Did the organization report an amount in Part X, line 21, for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* . . . . . . . . . . . . . . . . . . . . . . | **9** | | X |
| **10** | Did the organization, directly or through a related organization, hold assets in donor-restricted endowments or in quasi-endowments? *If "Yes," complete Schedule D, Part V* . . . . . . . . . . . . . . . . . . . . . . | **10** | | X |
| **11** | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X, as applicable. | | | |
| **a** | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D, Part VI* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **11a** | X | |
| **b** | Did the organization report an amount for investments - other securities in Part X, line 12, that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* . . . . . . . . . . . . . | **11b** | | X |
| **c** | Did the organization report an amount for investments - program related in Part X, line 13, that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* . . . . . . . . . . . | **11c** | X | |
| **d** | Did the organization report an amount for other assets in Part X, line 15, that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* . . . . . . . . . . . . . . . . . . | **11d** | | X |
| **e** | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* . . . . . . | **11e** | X | |
| **f** | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* . . . . . | **11f** | | X |
| **12a** | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **12a** | | X |
| **b** | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* . . . . . . . | **12b** | | X |
| **13** | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* . . . . . . . . . . . . . | **13** | | X |
| **14a** | Did the organization maintain an office, employees, or agents outside of the United States? . . . . . . . . . . . . . . . . | **14a** | | X |
| **b** | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* . . . . . . . . . . . . . | **14b** | | X |
| **15** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* . . . . . . . . . . . . . . . . . | **15** | | X |
| **16** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* . . . . . . . . . . . . . | **16** | | X |
| **17** | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I.* See instructions . . . . . . . . . . . | **17** | | X |
| **18** | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* . . . . . . . . . . . . . . . . . . . . . . | **18** | | X |
| **19** | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **19** | | X |
| **20a** | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* . . . . . . . . . . . . . | **20a** | | X |
| **b** | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? . . . . . . . . . . . | **20b** | | |
| **21** | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* . . . . . . . . . . . . . . | **21** | X | |

EEA                                                                              Form **990** (2024)

Form 990 (2024)   **Fork Food Lab**   45-4116596   Page **4**

| Part IV | Checklist of Required Schedules *(continued)* | | | |
|---|---|---|:---:|:---:|
| | | | Yes | No |
| 22 | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* | **22** | | X |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5, about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* | **23** | | X |
| 24a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* | **24a** | | X |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? | **24b** | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? | **24c** | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? | **24d** | | |
| 25a | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* | **25a** | | X |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* | **25b** | | X |
| 26 | Did the organization report any amount on Part X, line 5 or 22, for receivables from or payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part II* | **26** | X | |
| 27 | Did the organization provide a grant or other assistance to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor or employee thereof, a grant selection committee member, or to a 35% controlled entity (including an employee thereof) or family member of any of these persons? *If "Yes," complete Schedule L, Part III* | **27** | | X |
| 28 | Was the organization a party to a business transaction with one of the following parties? (See the Schedule L, Part IV, instructions for applicable filing thresholds, conditions, and exceptions). | | | |
| a | A current or former officer, director, trustee, key employee, creator or founder, or substantial contributor? *If "Yes," complete Schedule L, Part IV* | **28a** | | X |
| b | A family member of any individual described in line 28a? *If "Yes," complete Schedule L, Part IV* | **28b** | | X |
| c | A 35% controlled entity of one or more individuals and/or organizations described in line 28a or 28b? *If "Yes," complete Schedule L, Part IV* | **28c** | | X |
| 29 | Did the organization receive more than $25,000 in noncash contributions? *If "Yes," complete Schedule M* | **29** | | X |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* | **30** | | X |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | **31** | | X |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* | **32** | | X |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* | **33** | | X |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* | **34** | X | |
| 35a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | **35a** | X | |
| b | If "Yes" to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* | **35b** | | X |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* | **36** | | X |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | **37** | | X |
| 38 | Did the organization complete Schedule O and provide explanations on Schedule O for Part VI, lines 11b and 19? **Note:** All Form 990 filers are required to complete Schedule O | **38** | X | |

| Part V | Statements Regarding Other IRS Filings and Tax Compliance |
|---|---|

Check if Schedule O contains a response or note to any line in this Part V . . . . . . . . . . . . . . . . . □

| | | | | | Yes | No |
|---|---|---|:---:|:---:|:---:|:---:|
| 1a | Enter the number reported in box 3 of Form 1096. Enter -0- if not applicable | **1a** | 2 | | | |
| b | Enter the number of Forms W-2G included on line 1a. Enter -0- if not applicable | **1b** | 0 | | | |
| c | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? | | | **1c** | | |

EEA | Form **990** (2024)

Form 990 (2024)      **Fork Food Lab**                                45-4116596        Page **5**

| Part V | Statements Regarding Other IRS Filings and Tax Compliance *(continued)* | | Yes | No |
|---|---|---|---|---|

| | | | Yes | No |
|---|---|---|---|---|
| **2a** | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return . . . . . . . . **2a** 9 | | | |
| **b** | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? . . . . . . . . . . . | **2b** | X | |
| **3a** | Did the organization have unrelated business gross income of $1,000 or more during the year? . . . . . . . . . . . . . . | **3a** | | X |
| **b** | If "Yes," has it filed a Form 990-T for this year? *If "No" to line 3b, provide an explanation on Schedule O* . . . . . . . . . . | **3b** | | |
| **4a** | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? . . . . . . . . | **4a** | | X |
| **b** | If "Yes," enter the name of the foreign country _____ See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | |
| **5a** | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? . . . . . . . . . . | **5a** | | X |
| **b** | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? . . . . . . . . . . | **5b** | | X |
| **c** | If "Yes" to line 5a or 5b, did the organization file Form 8886-T? . . . . . . . . . . . . . . . . . . | **5c** | | |
| **6a** | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? . . . . . . . . . . . . . | **6a** | | X |
| **b** | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **6b** | | |
| **7** | **Organizations that may receive deductible contributions under section 170(c).** | | | |
| **a** | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **7a** | | X |
| **b** | If "Yes," did the organization notify the donor of the value of the goods or services provided? . . . . . . . . . . . . . | **7b** | | |
| **c** | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **7c** | | X |
| **d** | If "Yes," indicate the number of Forms 8282 filed during the year . . . . . . . . . . . . . . **7d** | | | |
| **e** | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? . . . . . . . . . | **7e** | | X |
| **f** | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? . . . . . . . . . . | **7f** | | X |
| **g** | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? . . . . | **7g** | | |
| **h** | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? . . . . . . . | **7h** | | |
| **8** | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? . . . . . . . . . . . . . . . . | **8** | | |
| **9** | **Sponsoring organizations maintaining donor advised funds.** | | | |
| **a** | Did the sponsoring organization make any taxable distributions under section 4966? . . . . . . . . . . . . . . . | **9a** | | |
| **b** | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? . . . . . . . . . . . . | **9b** | | |
| **10** | **Section 501(c)(7) organizations.** Enter: | | | |
| **a** | Initiation fees and capital contributions included on Part VIII, line 12 . . . . . . . . . . . . . . **10a** | | | |
| **b** | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities . . . . . . . . . **10b** | | | |
| **11** | **Section 501(c)(12) organizations.** Enter: | | | |
| **a** | Gross income from members or shareholders . . . . . . . . . . . . . . . . . . . . **11a** | | | |
| **b** | Gross income from other sources. (Do not net amounts due or paid to other sources against amounts due or received from them.) . . . . . . . . . . . . . . . . . . . **11b** | | | |
| **12a** | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? . . . . . . . . . | **12a** | | |
| **b** | If "Yes," enter the amount of tax-exempt interest received or accrued during the year . . . . . . . . . . . **12b** | | | |
| **13** | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | |
| **a** | Is the organization licensed to issue qualified health plans in more than one state? . . . . . . . . . . . . . . . | **13a** | | |
| | **Note:** See the instructions for additional information the organization must report on Schedule O. | | | |
| **b** | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans . . . . . . . . . . . . . . . **13b** | | | |
| **c** | Enter the amount of reserves on hand . . . . . . . . . . . . . . . . . . . . . . **13c** | | | |
| **14a** | Did the organization receive any payments for indoor tanning services during the tax year? . . . . . . . . . . . . . | **14a** | | X |
| **b** | If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation on Schedule O* . . . . . . . . . | **14b** | | |
| **15** | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? . . . . . . . . . . . . . . . . . . . . . . . . . | **15** | | X |
| | If "Yes," see the instructions and file Form 4720, Schedule N. | | | |
| **16** | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? . . . . . . . . | **16** | | X |
| | If "Yes," complete Form 4720, Schedule O. | | | |
| **17** | **Section 501(c)(21) organizations.** Did the trust, or any disqualified or other person, engage in any activities that would result in the imposition of an excise tax under section 4951, 4952, or 4953? . . . . . . . . . . . . . . | **17** | | |
| | If "Yes," complete Form 6069. | | | |

EEA                                                        Form **990** (2024)

Client Copy

Form 990 (2024)   **Fork Food Lab**                                    45-4116596        Page **6**

| **Part VI** | **Governance, Management, and Disclosure.** *For each "Yes" response to lines 2 through 7b below, and for a "No"* |
| --- | --- |

*response to line 8a, 8b, or 10b below, describe the circumstances, processes, or changes on Schedule O. See instructions.*

Check if Schedule O contains a response or note to any line in this Part VI . . . . . . . . . . . . . . . . . . . . . .  ☒

## Section A. Governing Body and Management

|  |  |  | Yes | No |
| --- | --- | --- | --- | --- |
| **1a** | Enter the number of voting members of the governing body at the end of the tax year  . . . . . . . . . .  **1a** **8** |  |  |  |
|  | If there are material differences in voting rights among members of the governing body, or |  |  |  |  |
|  | if the governing body delegated broad authority to an executive committee or similar |  |  |  |  |
|  | committee, explain on Schedule O. |  |  |  |  |
| **b** | Enter the number of voting members included on line 1a, above, who are independent  . . . . . . . . . .  **1b** **8** |  |  |  |
| **2** | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with |  |  |  |  |
|  | any other officer, director, trustee, or key employee? . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **2** |  | X |
| **3** | Did the organization delegate control over management duties customarily performed by or under the direct |  |  |  |  |
|  | supervision of officers, directors, trustees, or key employees to a management company or other person?  . . . . . . . . . . | **3** |  | X |
| **4** | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed?  . . . . . . . | **4** |  | X |
| **5** | Did the organization become aware during the year of a significant diversion of the organization's assets? . . . . . . . . . . . | **5** |  | X |
| **6** | Did the organization have members or stockholders?  . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **6** |  | X |
| **7a** | Did the organization have members, stockholders, or other persons who had the power to elect or appoint |  |  |  |  |
|  | one or more members of the governing body? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **7a** |  | X |
| **b** | Are any governance decisions of the organization reserved to (or subject to approval by) members, |  |  |  |  |
|  | stockholders, or persons other than the governing body? . . . . . . . . . . . . . . . . . . . . . . . . . . | **7b** |  | X |
| **8** | Did the organization contemporaneously document the meetings held or written actions undertaken during |  |  |  |  |
|  | the year by the following: |  |  |  |  |
| **a** | The governing body? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **8a** | X |  |
| **b** | Each committee with authority to act on behalf of the governing body? . . . . . . . . . . . . . . . . . . . . | **8b** | X |  |
| **9** | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at |  |  |  |  |
|  | the organization's mailing address? *If "Yes," provide the names and addresses on Schedule O*  . . . . . . . . . . . . . . . | **9** |  | X |

## Section B. Policies *(This Section B requests information about policies not required by the Internal Revenue Code.)*

|  |  |  | Yes | No |
| --- | --- | --- | --- | --- |
| **10a** | Did the organization have local chapters, branches, or affiliates?  . . . . . . . . . . . . . . . . . . . . . . | **10a** |  | X |
| **b** | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, |  |  |  |  |
|  | affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes?  . . . . . . . . . . | **10b** |  |  |
| **11a** | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form?  . . . | **11a** | X |  |
| **b** | Describe on Schedule O the process, if any, used by the organization to review this Form 990. |  |  |  |  |
| **12a** | Did the organization have a written conflict of interest policy? *If "No," go to line 13*  . . . . . . . . . . . . . . . . . | **12a** | X |  |
| **b** | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts?  . . | **12b** | X |  |
| **c** | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes,"* |  |  |  |  |
|  | *describe on Schedule O how this was done* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **12c** | X |  |
| **13** | Did the organization have a written whistleblower policy? . . . . . . . . . . . . . . . . . . . . . . . . . . | **13** |  | X |
| **14** | Did the organization have a written document retention and destruction policy? . . . . . . . . . . . . . . . . . | **14** |  | X |
| **15** | Did the process for determining compensation of the following persons include a review and approval by |  |  |  |  |
|  | independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? |  |  |  |  |
| **a** | The organization's CEO, Executive Director, or top management official  . . . . . . . . . . . . . . . . . . . . | **15a** | X |  |
| **b** | Other officers or key employees of the organization  . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **15b** |  | X |
|  | If "Yes" to line 15a or 15b, describe the process on Schedule O. See instructions. |  |  |  |  |
| **16a** | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement |  |  |  |  |
|  | with a taxable entity during the year? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **16a** |  | X |
| **b** | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its |  |  |  |  |
|  | participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the |  |  |  |  |
|  | organization's exempt status with respect to such arrangements?  . . . . . . . . . . . . . . . . . . . . . . | **16b** |  |  |

## Section C. Disclosure

**17** List the states with which a copy of this Form 990 is required to be filed        **Maine**

**18** Section 6104 requires an organization to make its Forms 1023 (1024 or 1024-A, if applicable), 990, and 990-T (section 501(c)

(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

☐ Own website     ☒ Another's website     ☒ Upon request     ☐ Other *(explain on Schedule O)*

**19** Describe on Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy,

and financial statements available to the public during the tax year.

**20** State the name, address, and telephone number of the person who possesses the organization's books and records.

     **William Seretta (207)831-1438, 95 Darling Avenue,  South Portland, ME 04106**

EEA                                                                    Form **990** (2024)

Form 990 (2024)   **Fork Food Lab**   45-4116596   Page **7**

**Part VII** | **Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Check if Schedule O contains a response or note to any line in this Part VII   . . . . . . . . . . . . . . . . . . . . . . .  ☐

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

• List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.

• List all of the organization's **current** key employees, if any. See the instructions for definition of "key employee."

• List the organization's five **current** highest compensated employees (other than an officer, director, trustee, or key employee) who received reportable compensation (box 5 of Form W-2, box 6 of Form 1099-MISC, and/or box 1 of Form 1099-NEC) of more than $100,000 from the organization and any related organizations.

• List all of the organization's **former** officers, key employees, and highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.

• List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See the instructions for the order in which to list the persons above.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A)<br>Name and title | (B)<br>Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D)<br>Reportable compensation from the organization (W-2/ 1099-MISC/ 1099-NEC) | (E)<br>Reportable compensation from related organizations (W-2/ 1099-MISC/ 1099-NEC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| _(1)_ William Seretta<br>Executive Director | 40.00 | | | X | | | | 54,924 | 0 | 2,490 |
| _(2)_ Michael J Walker<br>Board Chair | 4.00 | X | | X | | | | 0 | 0 | 0 |
| _(3)_ Thomas Settlemire, PHD<br>Board Member | 1.00 | X | | | | | | 0 | 0 | 0 |
| _(4)_ Ryan Owens<br>Board Member, Part-Year | 1.00 | X | | | | | | 0 | 0 | 0 |
| _(5)_ John Naylor<br>Board Member | 1.00 | X | | | | | | 0 | 0 | 0 |
| _(6)_ Maeve McInnis<br>Board Member | 1.00 | X | | | | | | 0 | 0 | 0 |
| _(7)_ Matt Chin<br>Board Secretary | 2.00 | X | | X | | | | 0 | 0 | 0 |
| _(8)_ Hema Narayan<br>Board Vice-Chair, Part-Year | 1.00 | X | | X | | | | 0 | 0 | 0 |
| _(9)_ Ben McCall<br>Board Member, Part-Year | 1.00 | X | | | | | | 0 | 0 | 0 |
| _(10)_ Penny Jordan<br>Board Member | 1.00 | X | | | | | | 0 | 0 | 0 |
| _(11)_ Peter Hall<br>Board Treasurer | 1.00 | X | | X | | | | 0 | 0 | 0 |
| _(12)_ Danica Barboza<br>Boaad Member | 1.00 | X | | | | | | 0 | 0 | 0 |
| _(13)_ | | | | | | | | | | |
| _(14)_ | | | | | | | | | | |

Client Copy

EEA   Form **990** (2024)

Form 990 (2024)          **Fork Food Lab**                                    45-4116596          Page **8**

| Part VII | Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)* |
|---|---|

| (A)<br>Name and title | (B)<br>Average hours per week (list any hours for related organizations below dotted line) | (C)<br>Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (15) | | | | | | | | | | |
| (16) | | | | | | | | | | |
| (17) | | | | | | | | | | |
| (18) | | | | | | | | | | |
| (19) | | | | | | | | | | |
| (20) | | | | | | | | | | |
| (21) | | | | | | | | | | |
| (22) | | | | | | | | | | |
| (23) | | | | | | | | | | |
| (24) | | | | | | | | | | |
| (25) | | | | | | | | | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **1b** | **Subtotal** . . . . . . . . . . . . . . . . . . . . . . . . | | | | | | | 54,924 | | 2,490 |
| **c** | **Total from continuation sheets to Part VII, Section A** . . . . . . . . . . . . . . | | | | | | | | | |
| **d** | **Total (add lines 1b and 1c)** . . . . . . . . . . . . . . . . . . . . . | | | | | | | 54,924 | 0 | 2,490 |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization                                                          0

| | | Yes | No |
|---|---|---|---|
| **3** | Did the organization list any **former** officer, director, trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . . . . . . . **3** | | X |
| **4** | For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4** | | X |
| **5** | Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* . . . . . . . . . . . . . . . . . **5** | | X |

### Section B. Independent Contractors

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A)<br>Name and business address | (B)<br>Description of services | (C)<br>Compensation |
|---|---|---|
| Asa Gorman Builders, 1034 Westbrook Street Portland, ME 0 | Construction | 229,281 |
| | | |
| | | |
| | | |
| | | |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization                          **1**

EEA                                                                                     Form **990** (2024)

Form 990 (2024)     **Fork Food Lab**                                    45-4116596            Page **9**

| Part VIII | Statement of Revenue |
|---|---|

Check if Schedule O contains a response or note to any line in this Part VIII . . . . . . . . . . . . . . . . . . . . . . . ☐

| | | | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512–514 |
|---|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | **1a** | Federated campaigns . . . . . . . . | **1a** | | | | |
| | **b** | Membership dues . . . . . . . . . . | **1b** | | | | |
| | **c** | Fundraising events . . . . . . . . . | **1c** | | | | |
| | **d** | Related organizations . . . . . . . . | **1d** | | | | |
| | **e** | Government grants (contributions) . . | **1e** | 654,662 | | | |
| | **f** | All other contributions, gifts, grants, and similar amounts not included above | **1f** | 555,066 | | | |
| | **g** | Noncash contributions included in lines 1a-1f . . . . . . . . . . . . . | **1g** $ | | | | |
| | **h** | **Total.** Add lines 1a-1f . . . . . . . . . . . . . . . . . . . | | 1,209,728 | | | |

| | | | Business Code | | | | |
|---|---|---|---|---|---|---|---|
| **Program Service Revenue** | **2a** | **Membership Fees** | 561499 | 410,350 | 410,350 | | |
| | **b** | | | | | | |
| | **c** | | | | | | |
| | **d** | | | | | | |
| | **e** | | | | | | |
| | **f** | All other program service revenue . . . . . . | | | | | |
| | **g** | **Total.** Add lines 2a-2f . . . . . . . . . . . . . . . . . . . . | | 410,350 | | | |

| | | | | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded |
|---|---|---|---|---|---|---|---|---|
| **Other Revenue** | **3** | Investment income (including dividends, interest, and other similar amounts) . . . . . . . . . . . . . . . . . . . . | | | | | | |
| | **4** | Income from investment of tax-exempt bond proceeds . . . . | | | | | | |
| | **5** | Royalties . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | | | | |
| | **6a** | Gross rents . . . . . . | **6a** | (i) Real / (ii) Personal | | | | |
| | **b** | Less: rental expenses . . | **6b** | | | | | |
| | **c** | Rental income or (loss) | **6c** | | | | | |
| | **d** | Net rental income or (loss) . . . . . . . . . . . . . . . . . . . | | | | | | |
| | **7a** | Gross amount from sales of assets other than inventory . . | **7a** | (i) Securities / (ii) Other | | | | |
| | **b** | Less: cost or other basis and sales expenses . . | **7b** | | | | | |
| | **c** | Gain or (loss) . . . . . | **7c** | | | | | |
| | **d** | Net gain or (loss) . . . . . . . . . . . . . . . . . . . . . . . | | | | | | |
| | **8a** | Gross income from fundraising events (not including $ _____ of contributions reported on line 1c). See Part IV, line 18 . . . . . . . | **8a** | | | | | |
| | **b** | Less: direct expenses . . . . . . . . . | **8b** | | | | | |
| | **c** | Net income or (loss) from fundraising events . . . . . . . . . | | | | | | |
| | **9a** | Gross income from gaming activities. See Part IV, line 19 . . . . . . | **9a** | | | | | |
| | **b** | Less: direct expenses . . . . . . . . . | **9b** | | | | | |
| | **c** | Net income or (loss) from gaming activities . . . . . . . . | | | | | | |
| | **10a** | Gross sales of inventory, less returns and allowances . . . . . . . . | **10a** | 21,606 | | | | |
| | **b** | Less: cost of goods sold . . . . . . . | **10b** | 15,785 | | | | |
| | **c** | Net income or (loss) from sales of inventory . . . . . . . . . | | 5,821 | 5,821 | | |

| | | | Business Code | | | | |
|---|---|---|---|---|---|---|---|
| **Miscellanous Revenue** | **11a** | | | | | | |
| | **b** | | | | | | |
| | **c** | | | | | | |
| | **d** | All other revenue . . . . . . . . . | | | | | |
| | **e** | **Total.** Add lines 11a-11d . . . . . . . . . . . . . . . . | | | | | |
| | **12** | **Total revenue.** See instructions . . . . . . . . . . . . . . . | | 1,625,899 | 416,171 | 0 | 0 |

EEA                                                                Form **990** (2024)

Form 990 (2024)   **Fork Food Lab**   45-4116596   Page **10**

## Part IX | Statement of Functional Expenses

*Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).*

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . . . . . . . . . . . . □

| *Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII.* | (A)<br>Total expenses | (B)<br>Program service expenses | (C)<br>Management and general expenses | (D)<br>Fundraising expenses |
|---|---|---|---|---|
| **1** Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 . . . | 70,670 | 70,670 | | |
| **2** Grants and other assistance to domestic individuals. See Part IV, line 22 . . . . . . . . . . . | | | | |
| **3** Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16 . . . . | | | | |
| **4** Benefits paid to or for members . . . . . . . . . | | | | |
| **5** Compensation of current officers, directors, trustees, and key employees . . . . . . . . . . . | 57,414 | 48,802 | 5,741 | 2,871 |
| **6** Compensation not included above to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) . . . . . . | | | | |
| **7** Other salaries and wages . . . . . . . . . . . . . | 249,127 | 211,758 | 24,913 | 12,456 |
| **8** Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) . . | | | | |
| **9** Other employee benefits . . . . . . . . . . . . | 29,369 | 24,964 | 2,937 | 1,468 |
| **10** Payroll taxes . . . . . . . . . . . . . | 109,980 | 93,483 | 10,998 | 5,499 |
| **11** Fees for services (nonemployees): | | | | |
| **a** Management . . . . . . . . . . . . . . . . . . . . | | | | |
| **b** Legal . . . . . . . . . . . . . . . . . . . . | 1,641 | | 1,641 | |
| **c** Accounting . . . . . . . . . . . . . . . . . . . . | | | | |
| **d** Lobbying . . . . . . . . . . . . . . . . . . . . | | | | |
| **e** Professional fundraising services. See Part IV, line 17 . . | | | | |
| **f** Investment management fees . . . . . . . . . . . . . | | | | |
| **g** Other. (If line 11g amount exceeds 10% of line 25, column (A), amount, list line 11g expenses on Schedule O.) . . | 17,652 | | 17,652 | |
| **12** Advertising and promotion . . . . . . . . . . . | | | | |
| **13** Office expenses . . . . . . . . . . . . . | 4,435 | | 4,435 | |
| **14** Information technology . . . . . . . . . . . . . | 8,025 | | 8,025 | |
| **15** Royalties . . . . . . . . . . . . . . . . . . . . | | | | |
| **16** Occupancy . . . . . . . . . . . . . . . . . . | 550,634 | 468,039 | 55,063 | 27,532 |
| **17** Travel . . . . . . . . . . . . . . . . . . . . | 451 | 451 | | |
| **18** Payments of travel or entertainment expenses for any federal, state, or local public officials . . . . | | | | |
| **19** Conferences, conventions, and meetings . . . . . . . | | | | |
| **20** Interest . . . . . . . . . . . . . . . . . . . . | 156,950 | | 156,950 | |
| **21** Payments to affiliates . . . . . . . . . . . . . . . | | | | |
| **22** Depreciation, depletion, and amortization . . . . . . | 78,260 | 66,521 | 7,826 | 3,913 |
| **23** Insurance . . . . . . . . . . . . . . . . . . | 17,803 | 15,132 | 1,780 | 891 |
| **24** Other expenses. Itemize expenses not covered above. (List miscellaneous expenses on line 24e. If line 24e amount exceeds 10% of line 25, column (A), amount, list line 24e expenses on Schedule O.) | | | | |
| **a** Kitchen Supplies & Smallware | 157,225 | 157,225 | | |
| **b** Equipment Rental and Repair | 11,803 | 11,803 | | |
| **c** Other Costs | 1,502 | 1,277 | 150 | 75 |
| **d** Licenses | 26,256 | 26,256 | | |
| **e** All other expenses | | | | |
| **25** **Total functional expenses.** Add lines 1 through 24e . . | 1,549,197 | 1,196,381 | 298,111 | 54,705 |
| **26** **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ▶ □ if following SOP 98-2 (ASC 958-720) . . . . . . . . . | | | | |

EEA                                                                 Form **990** (2024)

Form 990 (2024)        **Fork Food Lab**                                    45-4116596        Page **11**

| Part X | Balance Sheet |
|---|---|

Check if Schedule O contains a response or note to any line in this Part X   . . . . . . . . . . . . . . . . . . . . . . ☐

|  |  |  | **(A)** Beginning of year |  | **(B)** End of year |
|---|---|---|---|---|---|
| **Assets** | **1** | Cash - non-interest-bearing | 7,064 | **1** | 175,550 |
| | **2** | Savings and temporary cash investments | | **2** | |
| | **3** | Pledges and grants receivable, net | | **3** | |
| | **4** | Accounts receivable, net | 43,112 | **4** | 109,957 |
| | **5** | Loans and other receivables from any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | **5** | |
| | **6** | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), and persons described in section 4958(c)(3)(B) | | **6** | |
| | **7** | Notes and loans receivable, net | | **7** | |
| | **8** | Inventories for sale or use | 2,155 | **8** | 2,155 |
| | **9** | Prepaid expenses and deferred charges | 4,146 | **9** | 5,146 |
| | **10a** | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D  **10a** 1,359,663 | | | |
| | **b** | Less: accumulated depreciation  **10b** 175,178 | 1,031,398 | **10c** | 1,184,485 |
| | **11** | Investments - publicly traded securities | | **11** | |
| | **12** | Investments - other securities. See Part IV, line 11 | | **12** | |
| | **13** | Investments - program-related. See Part IV, line 11 | 2,116,741 | **13** | 2,464,200 |
| | **14** | Intangible assets | | **14** | |
| | **15** | Other assets. See Part IV, line 11 | 113,925 | **15** | 1,005 |
| | **16** | **Total assets.** Add lines 1 through 15 (must equal line 33) | 3,318,541 | **16** | 3,942,498 |
| **Liabilities** | **17** | Accounts payable and accrued expenses | 770,871 | **17** | 1,448,988 |
| | **18** | Grants payable | | **18** | |
| | **19** | Deferred revenue | 4,669 | **19** | 4,669 |
| | **20** | Tax-exempt bond liabilities | | **20** | |
| | **21** | Escrow or custodial account liability. Complete Part IV of Schedule D | | **21** | |
| | **22** | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | 130,486 | **22** | 126,188 |
| | **23** | Secured mortgages and notes payable to unrelated third parties | 2,571,376 | **23** | 2,109,102 |
| | **24** | Unsecured notes and loans payable to unrelated third parties | | **24** | 329,755 |
| | **25** | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17-24). Complete Part X of Schedule D | 37,162 | **25** | 101,684 |
| | **26** | **Total liabilities.** Add lines 17 through 25 | 3,514,564 | **26** | 4,120,386 |
| **Net Assets or Fund Balances** | | **Organizations that follow FASB ASC 958, check here** ☒ **and complete lines 27, 28, 32, and 33.** | | | |
| | **27** | Net assets without donor restrictions | (196,023) | **27** | (177,888) |
| | **28** | Net assets with donor restrictions | | **28** | |
| | | **Organizations that do not follow FASB ASC 958, check here** ☐ **and complete lines 29 through 33.** | | | |
| | **29** | Capital stock or trust principal, or current funds | | **29** | |
| | **30** | Paid-in or capital surplus, or land, building, or equipment fund | | **30** | |
| | **31** | Retained earnings, endowment, accumulated income, or other funds | | **31** | |
| | **32** | Total net assets or fund balances | (196,023) | **32** | (177,888) |
| | **33** | Total liabilities and net assets/fund balances | 3,318,541 | **33** | 3,942,498 |

EEA                                                                          Form **990** (2024)

Client Copy

Form 990 (2024)      **Fork Food Lab**                                     45-4116596           Page **12**

| Part XI | Reconciliation of Net Assets |
|---|---|

Check if Schedule O contains a response or note to any line in this Part XI . . . . . . . . . . . . . . . . . . . □

| | | | |
|---|---|---|---:|
| **1** | Total revenue (must equal Part VIII, column (A), line 12) . . . . . . . . . . . . . . . . . . | **1** | 1,625,899 |
| **2** | Total expenses (must equal Part IX, column (A), line 25) . . . . . . . . . . . . . . . . . | **2** | 1,549,197 |
| **3** | Revenue less expenses. Subtract line 2 from line 1 . . . . . . . . . . . . . . . . . | **3** | 76,702 |
| **4** | Net assets or fund balances at beginning of year (must equal Part X, line 32, column (A)) . . . . . . . . . . | **4** | (196,023) |
| **5** | Net unrealized gains (losses) on investments . . . . . . . . . . . . . . . . . . . | **5** | |
| **6** | Donated services and use of facilities . . . . . . . . . . . . . . . . . . . | **6** | |
| **7** | Investment expenses . . . . . . . . . . . . . . . . . . . | **7** | |
| **8** | Prior period adjustments . . . . . . . . . . . . . . . . . . . . . . . | **8** | (58,567) |
| **9** | Other changes in net assets or fund balances (explain on Schedule O) . . . . . . . . . . . . | **9** | |
| **10** | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 32, column (B)) . . . . . . . . . . . . . . . . . . . | **10** | (177,888) |

| Part XII | Financial Statements and Reporting |
|---|---|

Check if Schedule O contains a response or note to any line in this Part XII . . . . . . . . . . . . . . . . . . . □

| | | Yes | No |
|---|---|:---:|:---:|
| **1** | Accounting method used to prepare the Form 990:   □ Cash   ☒ Accrual   □ Other _____ | | |
| | If the organization changed its method of accounting from a prior year or checked "Other," explain on Schedule O. | | |
| **2a** | Were the organization's financial statements compiled or reviewed by an independent accountant? . . . . . . . . . . . . . . | | x |
| | If "Yes," check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both.   □ Separate basis   □ Consolidated basis   □ Both consolidated and separate basis | | |
| **b** | Were the organization's financial statements audited by an independent accountant? . . . . . . . . . . . . . . | | x |
| | If "Yes," check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both.   □ Separate basis   □ Consolidated basis   □ Both consolidated and separate basis | | |
| **c** | If "Yes" to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? . . . . . . . . . . . | | |
| | If the organization changed either its oversight process or selection process during the tax year, explain on Schedule O. | | |
| **3a** | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Uniform Guidance, 2 C.F.R. Part 200, Subpart F? . . . . . . . . . . . . . . . . . . | | x |
| **b** | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why on Schedule O and describe any steps taken to undergo such audits . . . . . . . . . | | |

Row labels for Yes/No column: 2a, 2b, 2c, 3a, 3b

EEA                                                                      Form **990** (2024)

**SCHEDULE A**
**(Form 990)**

**Public Charity Status and Public Support**

Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.

**Attach to Form 990 or Form 990-EZ.**

**Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2024**

**Open to Public Inspection**

Department of the Treasury
Internal Revenue Service

| Name of the organization | Employer identification number |
|---|---|
| Fork Food Lab | 45-4116596 |

| **Part I** | **Reason for Public Charity Status.** (All organizations must complete this part.) See instructions. |
|---|---|

The organization is not a private foundation because it is: (For lines 1 through 12, check only one box.)

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990).)

3 ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state: _____

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☐ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

8 ☐ A community trust described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

9 ☐ An agricultural research organization described in **section 170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land-grant college of agriculture (see instructions). Enter the name, city, and state of the college or university: _____

10 ☒ An organization that normally receives (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions, subject to certain exceptions; and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

11 ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

12 ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box on lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g.

a ☐ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

b ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

c ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

d ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization must generally satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

e ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

f Enter the number of supported organizations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [____]

g Provide the following information about the supported organization(s).

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1-10 above (see instructions)) | (iv) Is the organization listed in your governing document? | | (v) Amount of monetary support (see instructions) | (vi) Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| | | | Yes | No | | |
| **(A)** | | | | | | |
| **(B)** | | | | | | |
| **(C)** | | | | | | |
| **(D)** | | | | | | |
| **(E)** | | | | | | |
| **Total** | | | | | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.**

EEA

**Schedule A (Form 990) 2024**

Client Copy

Schedule A (Form 990) 2024        **Fork Food Lab**                                    45-4116596         Page **2**

| **Part II** | **Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)** |
|---|---|

(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization fails to qualify under the tests listed below, please complete Part III.)

## Section A. Public Support

| Calendar year (or fiscal year beginning in) | **(a)** 2020 | **(b)** 2021 | **(c)** 2022 | **(d)** 2023 | **(e)** 2024 | **(f)** Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.")  . . . . | | | | | | |
| **2** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf  . . . . . | | | | | | |
| **3** The value of services or facilities furnished by a governmental unit to the organization without charge  . . . . . | | | | | | |
| **4** **Total.** Add lines 1 through 3  . . . . . | | | | | | |
| **5** The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f)  . . . . . | | | | | | |
| **6** **Public support.** Subtract line 5 from line 4  . | | | | | | 0 |

## Section B. Total Support

| Calendar year (or fiscal year beginning in) | **(a)** 2020 | **(b)** 2021 | **(c)** 2022 | **(d)** 2023 | **(e)** 2024 | **(f)** Total |
|---|---|---|---|---|---|---|
| **7** Amounts from line 4  . . . . . . . . . . | | | | | | |
| **8** Gross income from interest, dividends, payments received on securities loans, rents, royalties, and income from similar sources  . . . . . . . . . . . | | | | | | |
| **9** Net income from unrelated business activities, whether or not the business is regularly carried on  . . . . . . . . | | | | | | |
| **10** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.)  . . . . . . . . . | | | | | | |
| **11** **Total support.** Add lines 7 through 10 | | | | | | |

| | | |
|---|---|---|
| **12** Gross receipts from related activities, etc. (see instructions)  . . . . . . . . . . . . . . . . . . . . | **12** | |

**13** **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

## Section C. Computation of Public Support Percentage

| | | | |
|---|---|---|---|
| **14** Public support percentage for 2024 (line 6, column (f), divided by line 11, column (f))  . . . . . . | **14** | | % |
| **15** Public support percentage from 2023 Schedule A, Part II, line 14  . . . . . . . . . . . . . . . | **15** | | % |

**16a** **33 1/3% support test - 2024.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization  . . . . . . . . . . . . . . . . . . . . . . . ☐

**b** **33 1/3% support test - 2023.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization  . . . . . . . . . . . . . . . . . . . . . ☐

**17a** **10%-facts-and-circumstances test - 2024.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the facts-and-circumstances test, check this box and **stop here.** Explain in Part VI how the organization meets the facts-and-circumstances test. The organization qualifies as a publicly supported organization  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

**b** **10%-facts-and-circumstances test - 2023.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the facts-and-circumstances test, check this box and **stop here.** Explain in Part VI how the organization meets the facts-and-circumstances test. The organization qualifies as a publicly supported organization  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

**18** **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

EEA                                                                                          **Schedule A (Form 990) 2024**

Schedule A (Form 990) 2024     **Fork Food Lab**     45-4116596     Page **3**

| **Part III** | **Support Schedule for Organizations Described in Section 509(a)(2)** |
|---|---|

(Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

### Section A. Public Support

| Calendar year (or fiscal year beginning in) | (a) 2020 | (b) 2021 | (c) 2022 | (d) 2023 | (e) 2024 | (f) Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | 156,146 | 198,830 | 225,117 | 865,470 | 1,209,728 | 2,655,291 |
| **2** Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose . . . . | 155,274 | 262,741 | 309,025 | 333,856 | 431,956 | 1,492,852 |
| **3** Gross receipts from activities that are not an unrelated trade or business under section 513 | | | | | | |
| **4** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf . . . . . | | | | | | |
| **5** The value of services or facilities furnished by a governmental unit to the organization without charge . . . . . | | | | | | |
| **6** **Total.** Add lines 1 through 5 . . . . . | 311,420 | 461,571 | 534,142 | 1,199,326 | 1,641,684 | 4,148,143 |
| **7a** Amounts included on lines 1, 2, and 3 received from disqualified persons . . | | 2,000 | | | | 2,000 |
| **b** Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year | | | | | | |
| **c** Add lines 7a and 7b . . . . . . . . . | 0 | 2,000 | 0 | 0 | 0 | 2,000 |
| **8** **Public support.** (Subtract line 7c from line 6.) . . . . . . . . . . . . . . . . | | | | | | 4,146,143 |

### Section B. Total Support

| Calendar year (or fiscal year beginning in) | (a) 2020 | (b) 2021 | (c) 2022 | (d) 2023 | (e) 2024 | (f) Total |
|---|---|---|---|---|---|---|
| **9** Amounts from line 6 . . . . . . . . . . | 311,420 | 461,571 | 534,142 | 1,199,326 | 1,641,684 | 4,148,143 |
| **10a** Gross income from interest, dividends, payments received on securities loans, rents, royalties, and income from similar sources . | | | | | | |
| **b** Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975 . . . . . | | | | | | |
| **c** Add lines 10a and 10b . . . . . . . . | | | | | | |
| **11** Net income from unrelated business activities not included on line 10b, whether or not the business is regularly carried on | | | | | | |
| **12** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) . . . . . . . . . . | | | | | 6,031 | 6,031 |
| **13** **Total support.** (Add lines 9, 10c, 11, and 12.) . . . . . . . . . . . . . . . | 311,420 | 461,571 | 534,142 | 1,205,357 | 1,641,684 | 4,154,174 |

**14** **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

### Section C. Computation of Public Support Percentage

| | | | |
|---|---|---|---|
| **15** Public support percentage for 2024 (line 8, column (f), divided by line 13, column (f)) . . . . . . . | **15** | 99.81 % |
| **16** Public support percentage from 2023 Schedule A, Part III, line 15 . . . . . . . . . . . . . . . . . | **16** | 99.72 % |

### Section D. Computation of Investment Income Percentage

| | | | |
|---|---|---|---|
| **17** Investment income percentage for **2024** (line 10c, column (f), divided by line 13, column (f)) . . . | **17** | 0 % |
| **18** Investment income percentage from **2023** Schedule A, Part III, line 17 . . . . . . . . . . . . . . | **18** | 0 % |

**19a** **33 1/3% support tests - 2024.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization ☒

**b** **33 1/3% support tests - 2023.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3%, and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . ☐

**20** **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions . . ☐

EEA                          **Schedule A (Form 990) 2024**

Client Copy

Schedule A (Form 990) 2024     **Fork Food Lab**     45-4116596    Page **4**

| Part IV | Supporting Organizations |
|---|---|

(Complete only if you checked a box on line 12 of Part I. If you checked box 12a, Part I, complete Sections A and B. If you checked box 12b, Part I, complete Sections A and C. If you checked box 12c, Part I, complete Sections A, D, and E. If you checked box 12d, Part I, complete Sections A and D, and complete Part V.)

### Section A. All Supporting Organizations

|  |  |  | Yes | No |
|---|---|---|---|---|
| 1 | Are all of the organization's supported organizations listed by name in the organization's governing documents? *If "No," describe in **Part VI** how the supported organizations are designated. If designated by class or purpose, describe the designation. If historic and continuing relationship, explain.* | **1** | | |
| 2 | Did the organization have any supported organization that does not have an IRS determination of status under section 509(a)(1) or (2)? *If "Yes," explain in **Part VI** how the organization determined that the supported organization was described in section 509(a)(1) or (2).* | **2** | | |
| 3a | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? *If "Yes," answer lines 3b and 3c below.* | **3a** | | |
| b | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? *If "Yes," describe in **Part VI** when and how the organization made the determination.* | **3b** | | |
| c | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? *If "Yes," explain in **Part VI** what controls the organization put in place to ensure such use.* | **3c** | | |
| 4a | Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes," and if you checked 12a or 12b in Part I, answer lines 4b and 4c below.* | **4a** | | |
| b | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in **Part VI** how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.* | **4b** | | |
| c | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in **Part VI** what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* | **4c** | | |
| 5a | Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer lines 5b and 5c below (if applicable). Also, provide detail in **Part VI**, including (i) the names and EIN numbers of the supported organizations added, substituted, or removed; (ii) the reasons for each such action; (iii) the authority under the organization's organizing document authorizing such action; and (iv) how the action was accomplished (such as by amendment to the organizing document).* | **5a** | | |
| b | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | **5b** | | |
| c | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | **5c** | | |
| 6 | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in **Part VI**.* | **6** | | |
| 7 | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (as defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990).* | **7** | | |
| 8 | Did the organization make a loan to a disqualified person (as defined in section 4958) not described on line 7? *If "Yes," complete Part I of Schedule L (Form 990).* | **8** | | |
| 9a | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons, as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in **Part VI**.* | **9a** | | |
| b | Did one or more disqualified persons (as defined on line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in **Part VI**.* | **9b** | | |
| c | Did a disqualified person (as defined on line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in **Part VI**.* | **9c** | | |
| 10a | Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer line 10b below.* | **10a** | | |
| b | Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings.)* | **10b** | | |

EEA                                                       **Schedule A (Form 990) 2024**

Client Copy

Schedule A (Form 990) 2024   **Fork Food Lab**                                    45-4116596          Page **5**

| **Part IV** | **Supporting Organizations** *(continued)* | | | |
|---|---|---|---|---|

|  |  | | **Yes** | **No** |
|---|---|---|---|---|
| **11** | Has the organization accepted a gift or contribution from any of the following persons? | | | |
| **a** | A person who directly or indirectly controls, either alone or together with persons described on lines 11b and 11c below, the governing body of a supported organization? | **11a** | | |
| **b** | A family member of a person described on line 11a above? | **11b** | | |
| **c** | A 35% controlled entity of a person described on line 11a or 11b above? *If "Yes" to line 11a, 11b, or 11c, provide detail in Part VI.* | **11c** | | |

### Section B. Type I Supporting Organizations

|  |  | | **Yes** | **No** |
|---|---|---|---|---|
| **1** | Did the governing body, members of the governing body, officers acting in their official capacity, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's officers, directors, or trustees at all times during the tax year? *If "No," describe in Part VI how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove officers, directors, or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | **1** | | |
| **2** | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in Part VI how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised, or controlled the supporting organization.* | **2** | | |

### Section C. Type II Supporting Organizations

|  |  | | **Yes** | **No** |
|---|---|---|---|---|
| **1** | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? *If "No," describe in Part VI how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s).* | **1** | | |

### Section D. All Type III Supporting Organizations

|  |  | | **Yes** | **No** |
|---|---|---|---|---|
| **1** | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (i) a written notice describing the type and amount of support provided during the prior tax year, (ii) a copy of the Form 990 that was most recently filed as of the date of notification, and (iii) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? | **1** | | |
| **2** | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization(s) or (ii) serving on the governing body of a supported organization? *If "No," explain in Part VI how the organization maintained a close and continuous working relationship with the supported organization(s).* | **2** | | |
| **3** | By reason of the relationship described on line 2, above, did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in Part VI the role the organization's supported organizations played in this regard.* | **3** | | |

### Section E. Type III Functionally Integrated Supporting Organizations

**1** Check the box next to the method that the organization used to satisfy the Integral Part Test during the year **(see instructions)**.
**a** ☐ The organization satisfied the Activities Test. *Complete **line 2** below.*
**b** ☐ The organization is the parent of each of its supported organizations. *Complete **line 3** below.*
**c** ☐ The organization supported a governmental entity. *Describe in Part VI how you supported a governmental entity (see instructions).*

|  |  | | **Yes** | **No** |
|---|---|---|---|---|
| **2** | Activities Test. *Answer lines 2a and 2b below.* | | | |
| **a** | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in **Part VI identify those supported organizations and explain** how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities.* | **2a** | | |
| **b** | Did the activities described on line 2a, above, constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in **Part VI** the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement.* | **2b** | | |
| **3** | Parent of Supported Organizations. *Answer lines 3a and 3b below.* | | | |
| **a** | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations? *If "Yes" or "No," provide details in **Part VI.*** | **3a** | | |
| **b** | Did the organization exercise a substantial degree of direction over the policies, programs, and activities of each of its supported organizations? *If "Yes," describe in **Part VI** the role played by the organization in this regard.* | **3b** | | |

EEA                                                                        Schedule A (Form 990) 2024

Schedule A (Form 990) 2024      **Fork Food Lab**                                    45-4116596                      Page **6**

| Part V | Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations |
|---|---|

**1** ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov. 20, 1970 *(explain in Part VI)*. **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E.

| Section A - Adjusted Net Income | | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| **1** | Net short-term capital gain | 1 | | |
| **2** | Recoveries of prior-year distributions | 2 | | |
| **3** | Other gross income (see instructions) | 3 | | |
| **4** | Add lines 1 through 3. | 4 | | |
| **5** | Depreciation and depletion | 5 | | |
| **6** | Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | 6 | | |
| **7** | Other expenses (see instructions) | 7 | | |
| **8** | **Adjusted Net Income** (subtract lines 5, 6, and 7 from line 4) | 8 | | |

| Section B - Minimum Asset Amount | | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| **1** | Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year): | | | |
| **a** | Average monthly value of securities | 1a | | |
| **b** | Average monthly cash balances | 1b | | |
| **c** | Fair market value of other non-exempt-use assets | 1c | | |
| **d** | **Total** (add lines 1a, 1b, and 1c) | 1d | | |
| **e** | **Discount** claimed for blockage or other factors *(explain in detail in Part VI)*: | | | |
| **2** | Acquisition indebtedness applicable to non-exempt-use assets | 2 | | |
| **3** | Subtract line 2 from line 1d. | 3 | | |
| **4** | Cash deemed held for exempt use. Enter 0.015 of line 3 (for greater amount, see instructions). | 4 | | |
| **5** | Net value of non-exempt-use assets (subtract line 4 from line 3) | 5 | | |
| **6** | Multiply line 5 by 0.035. | 6 | | |
| **7** | Recoveries of prior-year distributions | 7 | | |
| **8** | **Minimum Asset Amount** (add line 7 to line 6) | 8 | | |

| Section C - Distributable Amount | | | | Current Year |
|---|---|---|---|---|
| **1** | Adjusted net income for prior year (from Section A, line 8, column A) | 1 | | |
| **2** | Enter 0.85 of line 1. | 2 | | |
| **3** | Minimum asset amount for prior year (from Section B, line 8, column A) | 3 | | |
| **4** | Enter greater of line 2 or line 3. | 4 | | |
| **5** | Income tax imposed in prior year | 5 | | |
| **6** | **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions). | 6 | | |
| **7** | ☐ Check here if the current year is the organization's first as a non-functionally integrated Type III supporting organization (see instructions). | | | |

EEA                                                                                      **Schedule A (Form 990) 2024**

Client Copy

Schedule A (Form 990) 2024        **Fork Food Lab**                                    45-4116596                Page **7**

| Part V | Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations *(continued)* |

| Section D - Distributions | | Current Year |
|---|---|---|
| **1** | Amounts paid to supported organizations to accomplish exempt purposes | **1** | |
| **2** | Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | **2** | |
| **3** | Administrative expenses paid to accomplish exempt purposes of supported organizations | **3** | |
| **4** | Amounts paid to acquire exempt-use assets | **4** | |
| **5** | Qualified set-aside amounts (prior IRS approval required - *provide details in **Part VI**) | **5** | |
| **6** | Other distributions *(describe in **Part VI**)*. See instructions. | **6** | |
| **7** | **Total annual distributions.** Add lines 1 through 6. | **7** | |
| **8** | Distributions to attentive supported organizations to which the organization is responsive *(provide details in **Part VI**)*. See instructions. | **8** | |
| **9** | Distributable amount for 2024 from Section C, line 6 | **9** | |
| **10** | Line 8 amount divided by line 9 amount | **10** | |

| Section E - Distribution Allocations (see instructions) | (i) Excess Distributions | (ii) Underdistributions Pre-2024 | (iii) Distributable Amount for 2024 |
|---|---|---|---|
| **1** Distributable amount for 2024 from Section C, line 6 | | | |
| **2** Underdistributions, if any, for years prior to 2024 (reasonable cause required - *explain in **Part VI**)*. See instructions. | | | |
| **3** Excess distributions carryover, if any, to 2024 | | | |
| **a** From 2019 . . . . . . . . | | | |
| **b** From 2020 . . . . . . . . | | | |
| **c** From 2021 . . . . . . . . | | | |
| **d** From 2022 . . . . . . . . | | | |
| **e** From 2023 . . . . . . . . | | | |
| **f** **Total** of lines 3a through 3e | | | |
| **g** Applied to underdistributions of prior years | | | |
| **h** Applied to 2024 distributable amount | | | |
| **i** Carryover from 2019 not applied (see instructions) | | | |
| **j** Remainder. Subtract lines 3g, 3h, and 3i from line 3f. | | | |
| **4** Distributions for 2024 from Section D, line 7: $ | | | |
| **a** Applied to underdistributions of prior years | | | |
| **b** Applied to 2024 distributable amount | | | |
| **c** Remainder. Subtract lines 4a and 4b from line 4. | | | |
| **5** Remaining underdistributions for years prior to 2024, if any. Subtract lines 3g and 4a from line 2. For result greater than zero, *explain in **Part VI**. See instructions. | | | |
| **6** Remaining underdistributions for 2024. Subtract lines 3h and 4b from line 1. For result greater than zero, *explain in **Part VI**. See instructions. | | | |
| **7** **Excess distributions carryover to 2025**. Add lines 3j and 4c. | | | |
| **8** Breakdown of line 7: | | | |
| **a** Excess from 2020 . . . . | | | |
| **b** Excess from 2021 . . . . | | | |
| **c** Excess from 2022 . . . . | | | |
| **d** Excess from 2023 . . . . | | | |
| **e** Excess from 2024 . . . . | | | |

EEA                                                                          **Schedule A (Form 990) 2024**

Client Copy

Schedule A (Form 990) 2024     **Fork Food Lab**     45-4116596     Page **8**

**Part VI** | **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a, and 3b; Part V, line 1; Part V, Section B, line 1e; Part V, Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions.)

Client Copy

EEA     **Schedule A (Form 990) 2024**

**Schedule B**
**(Form 990)**

(Rev. December 2024)

Department of the Treasury
Internal Revenue Service

# Schedule of Contributors

**Attach to Form 990, 990-EZ, or 990-PF.**

**Go to** *www.irs.gov/Form990* **for the latest information.**

OMB No. 1545-0047

| Name of the organization | **Employer identification number** |
|---|---|
| Fork Food Lab | 45-4116596 |

**Organization type** (check one):

**Filers of:**          **Section:**

Form 990 or 990-EZ          [X] 501(c)( **3** ) (enter number) organization

[ ] 4947(a)(1) nonexempt charitable trust **not** treated as a private foundation

[ ] 527 political organization

Form 990-PF          [ ] 501(c)(3) exempt private foundation

[ ] 4947(a)(1) nonexempt charitable trust treated as a private foundation

[ ] 501(c)(3) taxable private foundation

Check if your organization is covered by the **General Rule** or a **Special Rule.**

**Note:** Only a section 501(c)(7), (8), or (10) organization can check boxes for both the General Rule and a Special Rule. See instructions.

**General Rule**

[X] For an organization filing Form 990, 990-EZ, or 990-PF that received, during the year, contributions totaling $5,000 or more (in money or property) from any one contributor. Complete Parts I and II. See instructions for determining a contributor's total contributions.

**Special Rules**

[ ] For an organization described in section 501(c)(3) filing Form 990 or 990-EZ that met the 33 1/3% support test of the regulations under sections 509(a)(1) and 170(b)(1)(A)(vi), that checked Schedule A (Form 990), Part II, line 13, 16a, or 16b, and that received from any one contributor, during the year, total contributions of the greater of **(1)** $5,000; or **(2)** 2% of the amount on (i) Form 990, Part VIII, line 1h; or (ii) Form 990-EZ, line 1. Complete Parts I and II.

[ ] For an organization described in section 501(c)(7), (8), or (10) filing Form 990 or 990-EZ that received from any one contributor, during the year, total contributions of more than $1,000 *exclusively* for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals. Complete Parts I (entering "N/A" in column (b) instead of the contributor name and address), II, and III.

[ ] For an organization described in section 501(c)(7), (8), or (10) filing Form 990 or 990-EZ that received from any one contributor, during the year, contributions *exclusively* for religious, charitable, etc., purposes, but no such contributions totaled more than $1,000. If this box is checked, enter here the total contributions that were received during the year for an *exclusively* religious, charitable, etc., purpose. Don't complete any of the parts unless the **General Rule** applies to this organization because it received *nonexclusively* religious, charitable, etc., contributions totaling $5,000 or more during the year  · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·  $ _____

**Caution:** An organization that isn't covered by the General Rule and/or the Special Rules doesn't file Schedule B (Form 990), but it **must** answer "No" on Part IV, line 2, of its Form 990; or check the box on line H of its Form 990-EZ or on its Form 990-PF, Part I, line 2, to certify that it doesn't meet the filing requirements of Schedule B (Form 990).

**For Paperwork Reduction Act Notice, see the instructions for Form 990, 990-EZ, or 990-PF.**          **Schedule B (Form 990)  (Rev. 12-2024)**

EEA

Client Copy

Schedule B (Form 990) (Rev. 12-2024)                                                                    Page **2**

| Name of organization | Employer identification number |
|---|---|
| **Fork Food Lab** | **45-4116596** |

**Part I**     **Contributors** (see instructions). Use duplicate copies of Part I if additional space is needed.

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Total contributions | (d) Type of contribution |
|---|---|---|---|
| 1 | USDA Agricultural Marketing Service<br><br>12th St and Jefferson Drive, SW<br><br>Washington, DC 20001 | $ 654,662 | **Person** ☒<br>**Payroll** ☐<br>**Noncash** ☐<br><br>(Complete Part II for noncash contributions.) |
| 2 | The Betterment Fund<br><br>P.O. Box 979<br><br>Bethel, ME 04217 | $ 20,000 | **Person** ☒<br>**Payroll** ☐<br>**Noncash** ☐<br><br>(Complete Part II for noncash contributions.) |
| 3 | Roxanne Quimby Foundation<br><br>769 Congress Street<br><br>Portland, ME 04102 | $ 22,000 | **Person** ☒<br>**Payroll** ☐<br>**Noncash** ☐<br><br>(Complete Part II for noncash contributions.) |
| 4 | Heny P. Kendall Foundation<br><br>P.O. Box 52200<br><br>Boston, MA 02205 | $ 193,369 | **Person** ☒<br>**Payroll** ☐<br>**Noncash** ☐<br><br>(Complete Part II for noncash contributions.) |
| 5 | Jeanette & Mark Hagan<br><br>107 Breakwater Farm Road<br><br>Cape Elizabeth, ME 04107 | $ 5,000 | **Person** ☒<br>**Payroll** ☐<br>**Noncash** ☐<br><br>(Complete Part II for noncash contributions.) |
| 6 | Bonnie Rukin<br><br>48 Evergreen Lane<br><br>Camden, ME 04843 | $ 10,000 | **Person** ☒<br>**Payroll** ☐<br>**Noncash** ☐<br><br>(Complete Part II for noncash contributions.) |

Client Copy

EEA                                                               **Schedule B (Form 990)  (Rev. 12-2024)**

Page **2**

| Name of organization | Employer identification number |
|---|---|
| **Fork Food Lab** | **45-4116596** |

**Part I**     **Contributors** (see instructions). Use duplicate copies of Part I if additional space is needed.

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Total contributions | (d) Type of contribution |
|---|---|---|---|
| 7 | Helen Norton<br><br>126 Skassen Lane<br><br>Harpswell, ME 04079 | $ 200,000 | **Person** [X]<br>**Payroll** [ ]<br>**Noncash** [ ]<br><br>(Complete Part II for noncash contributions.) |
| ___ |  | $ | **Person** [ ]<br>**Payroll** [ ]<br>**Noncash** [ ]<br><br>(Complete Part II for noncash contributions.) |
| ___ |  | $ | **Person** [ ]<br>**Payroll** [ ]<br>**Noncash** [ ]<br><br>(Complete Part II for noncash contributions.) |
| ___ |  | $ | **Person** [ ]<br>**Payroll** [ ]<br>**Noncash** [ ]<br><br>(Complete Part II for noncash contributions.) |
| ___ |  | $ | **Person** [ ]<br>**Payroll** [ ]<br>**Noncash** [ ]<br><br>(Complete Part II for noncash contributions.) |
| ___ |  | $ | **Person** [ ]<br>**Payroll** [ ]<br>**Noncash** [ ]<br><br>(Complete Part II for noncash contributions.) |

Client Copy

EEA

Schedule B (Form 990) (Rev. 12-2024)                                                                    Page **3**

| Name of organization | Employer identification number |
|---|---|
| **Fork Food Lab** | **45-4116596** |

| **Part II** | **Noncash Property** (see instructions). Use duplicate copies of Part II if additional space is needed. |
|---|---|

| **(a) No. from Part I** | **(b) Description of noncash property given** | **(c) FMV (or estimate)** (See instructions.) | **(d) Date received** |
|---|---|---|---|
| ____ | | $ _____ | _____ |
| ____ | | $ _____ | _____ |
| ____ | | $ _____ | _____ |
| ____ | | $ _____ | _____ |
| ____ | | $ _____ | _____ |
| ____ | | $ _____ | _____ |

EEA                                                                    Schedule B (Form 990) (Rev. 12-2024)

Schedule B (Form 990) (Rev. 12-2024)                                                                                      Page **4**

| Name of organization | Employer identification number |
|---|---|
| Fork Food Lab | 45-4116596 |

**Part III** | *Exclusively* religious, charitable, etc., contributions to organizations described in section 501(c)(7), (8), or (10) that total more than $1,000 for the year from any one contributor. Complete columns **(a)** through **(e)** and the following line entry. For organizations completing Part III, enter the total of *exclusively* religious, charitable, etc., contributions of **$1,000 or less** for the year. (Enter this information once. See instructions.)   **$** _____

Use duplicate copies of Part III if additional space is needed.

| (a) No. from Part I | (b) Purpose of gift | (c) Use of gift | (d) Description of how gift is held |
|---|---|---|---|
| ____ | | | |

**(e) Transfer of gift**

| Transferee's name, address, and ZIP + 4 | Relationship of transferor to transferee |
|---|---|
| | |

| (a) No. from Part I | (b) Purpose of gift | (c) Use of gift | (d) Description of how gift is held |
|---|---|---|---|
| ____ | | | |

**(e) Transfer of gift**

| Transferee's name, address, and ZIP + 4 | Relationship of transferor to transferee |
|---|---|
| | |

| (a) No. from Part I | (b) Purpose of gift | (c) Use of gift | (d) Description of how gift is held |
|---|---|---|---|
| ____ | | | |

**(e) Transfer of gift**

| Transferee's name, address, and ZIP + 4 | Relationship of transferor to transferee |
|---|---|
| | |

| (a) No. from Part I | (b) Purpose of gift | (c) Use of gift | (d) Description of how gift is held |
|---|---|---|---|
| ____ | | | |

**(e) Transfer of gift**

| Transferee's name, address, and ZIP + 4 | Relationship of transferor to transferee |
|---|---|
| | |

Client Copy

EEA                                                                          **Schedule B (Form 990)  (Rev. 12-2024)**

**SCHEDULE D**
**(Form 990)**

(Rev. December 2024)

Department of the Treasury
Internal Revenue Service

# Supplemental Financial Statements

Complete if the organization answered "Yes" on Form 990,
Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
**Attach to Form 990.**
Go to *www.irs.gov/Form990* for instructions and the latest information.

OMB No. 1545-0047

**Open to Public Inspection**

| Name of the organization | Employer identification number |
|---|---|
| Fork Food Lab | 45-4116596 |

## Part I — Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts

Complete if the organization answered "Yes" on Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year | | |
| 2 | Aggregate value of contributions to (during year) | | |
| 3 | Aggregate value of grants from (during year) | | |
| 4 | Aggregate value at end of year | | |

5  Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control?  ☐ Yes  ☐ No

6  Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit?  ☐ Yes  ☐ No

## Part II — Conservation Easements

Complete if the organization answered "Yes" on Form 990, Part IV, line 7.

1  Purpose(s) of conservation easements held by the organization (check all that apply).
☐ Preservation of land for public use (for example, recreation or education)
☐ Protection of natural habitat
☐ Preservation of open space
☐ Preservation of a historically important land area
☐ Preservation of a certified historic structure

2  Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year.

| | | | Held at the End of the Tax Year |
|---|---|---|---|
| a | Total number of conservation easements | 2a | |
| b | Total acreage restricted by conservation easements | 2b | |
| c | Number of conservation easements on a certified historic structure included on line 2a | 2c | |
| d | Number of conservation easements included on line 2c acquired after July 25, 2006, and not on a historic structure listed in the National Register | 2d | |

3  Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year

4  Number of states where property subject to conservation easement is located

5  Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds?  ☐ Yes  ☐ No

6  Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year

7  Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year  $

8  Does each conservation easement reported on line 2d above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)?  ☐ Yes  ☐ No

9  In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements.

## Part III — Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets

Complete if the organization answered "Yes" on Form 990, Part IV, line 8.

1a  If the organization elected, as permitted under FASB ASC 958, not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide in Part XIII the text of the footnote to its financial statements that describes these items.

b  If the organization elected, as permitted under FASB ASC 958, to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items.

(i)  Revenue included on Form 990, Part VIII, line 1  $

(ii)  Assets included in Form 990, Part X  $

2  If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under FASB ASC 958 relating to these items.

a  Revenue included on Form 990, Part VIII, line 1  $

b  Assets included in Form 990, Part X  $

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.**

**Schedule D (Form 990) (Rev. 12-2024)**

EEA

Client Copy

Schedule D (Form 990) (Rev. 12-2024) **Park Food Lab**                                    45-4116596                   Page **2**

| Part III | Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets *(continued)* |

**3** Using the organization's acquisition, accession, and other records, check any of the following that make significant use of its
collection items (check all that apply).

**a** ☐ Public exhibition        **d** ☐ Loan or exchange program

**b** ☐ Scholarly research        **e** ☐ Other _____

**c** ☐ Preservation for future generations

**4** Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part
XIII.

**5** During the year, did the organization solicit or receive donations of art, historical treasures, or other similar
assets to be sold to raise funds rather than to be maintained as part of the organization's collection? . . . . . . . . . . . ☐ Yes ☐ No

| Part IV | Escrow and Custodial Arrangements |

Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form
990, Part X, line 21.

**1a** Is the organization an agent, trustee, custodian, or other intermediary for contributions or other assets not
included on Form 990, Part X? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

**b** If "Yes," explain the arrangement in Part XIII and complete the following table.

|  |  | Amount |
|---|---|---|
| **c** Beginning balance . . . . . . . . . . . . . . . . . . . | **1c** | |
| **d** Additions during the year . . . . . . . . . . . . . . . | **1d** | |
| **e** Distributions during the year . . . . . . . . . . . . . | **1e** | |
| **f** Ending balance . . . . . . . . . . . . . . . . . . . . | **1f** | |

**2a** Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? . . . . . . . . ☐ Yes ☐ No

**b** If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII . . . . . . . . . . . . . . . ☐

| Part V | Endowment Funds |

Complete if the organization answered "Yes" on Form 990, Part IV, line 10.

|  | **(a)** Current year | **(b)** Prior year | **(c)** Two years back | **(d)** Three years back | **(e)** Four years back |
|---|---|---|---|---|---|
| **1a** Beginning of year balance . . . . . . | | | | | |
| **b** Contributions . . . . . . . . . . . . | | | | | |
| **c** Net investment earnings, gains, and losses . . . . . . . . . . . . . | | | | | |
| **d** Grants or scholarships . . . . . . . . | | | | | |
| **e** Other expenditures for facilities and programs . . . . . . . . . . . . . | | | | | |
| **f** Administrative expenses . . . . . . . | | | | | |
| **g** End of year balance . . . . . . . . . | | | | | |

**2** Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

**a** Board designated or quasi-endowment _____ %

**b** Permanent endowment _____ %

**c** Term endowment _____ %

The percentages on lines 2a, 2b, and 2c should equal 100%.

**3a** Are there endowment funds not in the possession of the organization that are held and administered for the

| | | Yes | No |
|---|---|---|---|
| organization by: | | | |
| **(i)** Unrelated organizations? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **3a(i)** | | |
| **(ii)** Related organizations? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **3a(ii)** | | |
| **b** If "Yes" on line 3a(ii), are the related organizations listed as required on Schedule R? . . . . . . . . . . . . . . . | **3b** | | |

**4** Describe in Part XIII the intended uses of the organization's endowment funds.

| Part VI | Land, Buildings, and Equipment |

Complete if the organization answered "Yes" on Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | **(a)** Cost or other basis (investment) | **(b)** Cost or other basis (other) | **(c)** Accumulated depreciation | **(d)** Book value |
|---|---|---|---|---|
| **1a** Land . . . . . . . . . . . . . . . . . . . | | | | |
| **b** Buildings . . . . . . . . . . . . . . . . . . | | | | |
| **c** Leasehold improvements . . . . . . . . . | | | | |
| **d** Equipment . . . . . . . . . . . . . . . | | | | |
| **e** Other . . . . . . . . . . . . . STMD1E . | | 1,359,663 | 175,178 | 1,184,485 |
| **Total.** Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, line 10c, column (B))* . . . . . . . . . . . . . | | | | 1,184,485 |

EEA                                               **Schedule D (Form 990) (Rev. 12-2024)**

Schedule D (Form 990)  (Rev. 12-2024)   **Fork Food Lab**                                45-4116596                Page **3**

### Part VII  Investments - Other Securities

Complete if the organization answered "Yes" on Form 990, Part IV, line 11b. See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) Financial derivatives . . . . . . . . . . . . . . . . . . . . | | |
| (2) Closely held equity interests . . . . . . . . . . . . . . . . . . . | | |
| (3) Other | | |
| (A) | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| **Total.** *(Column (b) must equal Form 990, Part X, line 12, col. (B))* . . . . . . | | |

### Part VIII  Investments - Program Related

Complete if the organization answered "Yes" on Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| (a) Description of investment | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) Investment in Fork Food Hub L3C | 2,464,200 | Cost |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| **Total.** *(Column (b) must equal Form 990, Part X, line 13, col. (B))* . . . . . . | 2,464,200 | |

### Part IX  Other Assets

Complete if the organization answered "Yes" on Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| (a) Description | (b) Book value |
|---|---|
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| **Total.** *(Column (b) must equal Form 990, Part X, line 15, col. (B))* . . . . . . . . . . . . . . . . . . . . . . . . . . . | |

### Part X  Other Liabilities

Complete if the organization answered "Yes" on Form 990, Part IV, line 11e or 11f. See Form 990, Part X, line 25.

| **1.** (a) Description of liability | (b) Book value | |
|---|---|---|
| (1) Federal income taxes | | |
| (2) Capital Lease Payable | 40,487 | |
| (3) Accrued Interest | 61,197 | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| **Total.** *(Column (b) must equal Form 990, Part X, line 25, col. (B))* . . | 101,684 | |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FASB ASC 740. Check here if the text of the footnote has been provided in Part XIII  . . . . . ☐

EEA                                                                   **Schedule D (Form 990)  (Rev. 12-2024)**

Client Copy

Schedule D (Form 990) (Rev. 12-2024) Food Lab                                                  45-4116596                    Page **4**

| **Part XI** | **Reconciliation of Revenue per Audited Financial Statements With Revenue per Return** | | | |
|---|---|---|---|---|
| | Complete if the organization answered "Yes" on Form 990, Part IV, line 12a. | | | |

| | | | | |
|---|---|---|---|---|
| **1** | Total revenue, gains, and other support per audited financial statements · · · · · · · · · · · · · · · · · · · | | **1** | |
| **2** | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | |
| **a** | Net unrealized gains (losses) on investments · · · · · · · · · · · · · · · · | **2a** | | |
| **b** | Donated services and use of facilities  · · · · · · · · · · · · · · · · · · | **2b** | | |
| **c** | Recoveries of prior year grants  · · · · · · · · · · · · · · · · · · · · | **2c** | | |
| **d** | Other (Describe in Part XIII.)  · · · · · · · · · · · · · · · · · · · · · | **2d** | | |
| **e** | Add lines **2a** through **2d**  · · · · · · · · · · · · · · · · · · · · · · · · · · · · | | **2e** | |
| **3** | Subtract line **2e** from line **1**  · · · · · · · · · · · · · · · · · · · · · · · · · · | | **3** | |
| **4** | Amounts included on Form 990, Part VIII, line 12, but not on line 1: | | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b  · · · · · · · | **4a** | | |
| **b** | Other (Describe in Part XIII.)  · · · · · · · · · · · · · · · · · · · · · · · | **4b** | | |
| **c** | Add lines **4a** and **4b**  · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · | | **4c** | |
| **5** | Total revenue.  Add lines **3** and **4c.**  *(This must equal Form 990, Part I, line 12.)*  · · · · · · · · · · · · · · · · | | **5** | |

| **Part XII** | **Reconciliation of Expenses per Audited Financial Statements With Expenses per Return** | | | |
|---|---|---|---|---|
| | Complete if the organization answered "Yes" on Form 990, Part IV, line 12a. | | | |

| | | | | |
|---|---|---|---|---|
| **1** | Total expenses and losses per audited financial statements  · · · · · · · · · · · · · · · · · · · · | | **1** | |
| **2** | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | |
| **a** | Donated services and use of facilities  · · · · · · · · · · · · · · · · · · | **2a** | | |
| **b** | Prior year adjustments  · · · · · · · · · · · · · · · · · · · · · · · · · · | **2b** | | |
| **c** | Other losses  · · · · · · · · · · · · · · · · · · · · · · · · · · | **2c** | | |
| **d** | Other (Describe in Part XIII.)  · · · · · · · · · · · · · · · · · · · · · | **2d** | | |
| **e** | Add lines **2a** through **2d**  · · · · · · · · · · · · · · · · · · · · · · · · · · · · | | **2e** | |
| **3** | Subtract line **2e** from line **1**  · · · · · · · · · · · · · · · · · · · · · · · · · · | | **3** | |
| **4** | Amounts included on Form 990, Part IX, line 25, but not on line 1: | | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b  · · · · · · · | **4a** | | |
| **b** | Other (Describe in Part XIII.)  · · · · · · · · · · · · · · · · · · · · · · · | **4b** | | |
| **c** | Add lines **4a** and **4b**  · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · | | **4c** | |
| **5** | Total expenses.  Add lines **3** and **4c.**  *(This must equal Form 990, Part I, line 18.)*  · · · · · · · · · · · · · · · · | | **5** | |

| **Part XIII** | **Supplemental Information** |
|---|---|

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

EEA                                                                                     Schedule D (Form 990)  (Rev. 12-2024)

Client Copy

Schedule D (Form 990) (Rev. 12-2024) Pork Food Lab

45-4116596 Page **5**

| Part XIII | Supplemental Information *(continued)* |
| --- | --- |

**SCHEDULE I**
**(Form 990)**
(Rev. December 2024)
Department of the Treasury
Internal Revenue Service

**Grants and Other Assistance to Organizations, Governments, and Individuals in the United States**
Complete if the organization answered "Yes" on Form 990, Part IV, line 21 or 22.
**Attach to Form 990.**
Go to *www.irs.gov/Form990* for instructions and the latest information.

OMB No. 1545-0047

**Open to Public Inspection**

| Name of the organization | Employer identification number |
|---|---|
| Fork Food Lab | 45-4116596 |

**Part I**  **General Information on Grants and Assistance**

1  Does the organization maintain records to substantiate the amount of the grants or assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance?  .......................................... ☒ Yes ☐ No

2  Describe in Part IV the organization's procedures for monitoring the use of grant funds in the United States.

**Part II**  **Grants and Other Assistance to Domestic Organizations and Domestic Governments.** Complete if the organization answered "Yes" on Form 990, Part IV, line 21, for any recipient that received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 (a) Name and address of organization or government | (b) EIN | (c) IRC section (if applicable) | (d) Amount of cash grant | (e) Amount of noncash assistance | (f) Method of valuation (book, FMV, appraisal, other) | (g) Description of noncash assistance | (h) Purpose of grant or assistance |
|---|---|---|---|---|---|---|---|
| (1) Healthy Communities of the Capital 11 Mechanic Street, Suite 101 Gardiner, ME 04345 | 41-2097383 | 501(c)3 | 26,275 | | | | Sub-Award for Food Programming |
| (2) Maine Farm & Sea Cooperative P.O. Box 8714 Portland, ME 04104 | 47-4838688 | 521 | 34,507 | | | | Sub-Award for Food Programming |
| (3) | | | | | | | |
| (4) | | | | | | | |
| (5) | | | | | | | |
| (6) | | | | | | | |
| (7) | | | | | | | |
| (8) | | | | | | | |
| (9) | | | | | | | |
| (10) | | | | | | | |

2  Enter total number of section 501(c)(3) and government organizations listed in the line 1 table  ....................................  1

3  Enter total number of other organizations listed in the line 1 table  ....................................  1

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.**
EEA

Schedule I (Form 990) (Rev. 12-2024)

Schedule I (Form 990) (Rev. 12-2024) Fork Food Lab                                          45-4116596                    Page **2**

**Part III** | **Grants and Other Assistance to Domestic Individuals.** Complete if the organization answered "Yes" on Form 990, Part IV, line 22.
Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Number of recipients | (c) Amount of cash grant | (d) Amount of noncash assistance | (e) Method of valuation (book, FMV, appraisal, other) | (f) Description of noncash assistance |
|---|---|---|---|---|---|
| **1** | | | | | |
| **2** | | | | | |
| **3** | | | | | |
| **4** | | | | | |
| **5** | | | | | |
| **6** | | | | | |
| **7** | | | | | |

**Part IV** | **Supplemental Information.** Provide the information required in Part I, line 2; Part III, column (b); and any other additional information.

01. Monitoring procedures (Part I, line 2)

All sub-awards are monitored through review of periodic program reporting provided by the sub-awardees and through ongoing

dialogue with same.

EEA                                                                                            **Schedule I (Form 990) (Rev. 12-2024)**

**SCHEDULE L**
**(Form 990)**

(Rev. December 2024)

Department of the Treasury
Internal Revenue Service

# Transactions With Interested Persons

**Complete if the organization answered "Yes" on Form 990, Part IV, line 25a, 25b, 26, 27,
28a, 28b, or 28c; or Form 990-EZ, Part V, line 38a or 40b.**
**Attach to Form 990 or Form 990-EZ.**
**Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**Open to Public
Inspection**

| Name of the organization | Employer identification number |
|---|---|
| Fork Food Lab | 45-4116596 |

## Part I — Excess Benefit Transactions (section 501(c)(3), section 501(c)(4), and section 501(c)(29) organizations only)
Complete if the organization answered "Yes" on Form 990, Part IV, line 25a or 25b; or Form 990-EZ, Part V, line 40b.

| 1 | (a) Name of disqualified person | (b) Relationship between disqualified person and organization | (c) Description of transaction | (d) Corrected? Yes | No |
|---|---|---|---|---|---|
| (1) | | | | | |
| (2) | | | | | |
| (3) | | | | | |

2 Enter the amount of tax incurred by the organization managers or disqualified persons during the year under section 4958 · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ▶ $ _____

3 Enter the amount of tax, if any, on line 2, above, reimbursed by the organization · · · · · · · · · · · · · · · · · · · ▶ $ _____

## Part II — Loans to and/or From Interested Persons
Complete if the organization answered "Yes" on Form 990-EZ, Part V, line 38a, or Form 990, Part IV, line 26; or if the organization reported an amount on Form 990, Part X, line 5, 6, or 22.

| (a) Name of interested person | (b) Relationship with organization | (c) Purpose of loan | (d) Loan to or from the organization? To | From | (e) Original principal amount | (f) Balance due | (g) In default? Yes | No | (h) Approved by board or committee? Yes | No | (i) Written agreement? Yes | No |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (1) Matthew Chin | Board Member | Cash Flow | X | | 50,000 | 50,000 | | X | X | | X | |
| (2) Peter Hall | Board Member | Cssh Flow | X | | 5,000 | 5,000 | | X | X | | X | |
| (3) Thomas Settlemire | Board Member | Cash Flow | X | | 10,000 | 10,000 | | X | X | | X | |
| (4) William Seretta | Executive Director | Cash Flow | X | | 81,800 | 61,188 | | X | X | | X | |
| (5) | | | | | | | | | | | | |
| **Total** · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ▶ $ | | | | | | 126,188 | | | | | | |

## Part III — Grants or Assistance Benefiting Interested Persons
Complete if the organization answered "Yes" on Form 990, Part IV, line 27.

| (a) Name of interested person | (b) Relationship between interested person and the organization | (c) Amount of assistance | (d) Type of assistance | (e) Purpose of assistance |
|---|---|---|---|---|
| (1) | | | | |
| (2) | | | | |
| (3) | | | | |
| (4) | | | | |
| (5) | | | | |

**For Paperwork Reduction Act Notice, see the instructions for Form 990 or 990-EZ.**    **Schedule L (Form 990) (Rev. 12-2024)**

EEA

Client Copy

Schedule L (Form 990) (Rev. 12-2024) Fork Food Lab                                    45-4116596                    Page **2**

## Part IV — Business Transactions Involving Interested Persons

Complete if the organization answered "Yes" on Form 990, Part IV, line 28a, 28b, or 28c.

| (a) Name of interested person | (b) Relationship between interested person and the organization | (c) Amount of transaction | (d) Description of transaction | (e) Sharing of organization's revenues? | |
|---|---|---|---|---|---|
| | | | | Yes | No |
| **(1)** | | | | | |
| **(2)** | | | | | |
| **(3)** | | | | | |
| **(4)** | | | | | |
| **(5)** | | | | | |

## Part V — Supplemental Information

Provide additional information for responses to questions on Schedule L. See instructions.

Client Copy

**SCHEDULE O**
**(Form 990)**
(Rev. December 2024)

Department of the Treasury
Internal Revenue Service

**Supplemental Information to Form 990 or 990-EZ**

**Complete to provide information for responses to specific questions on
Form 990 or 990-EZ or to provide any additional information.**
**Attach to Form 990 or Form 990-EZ.**
**Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

**Open to Public
Inspection**

| Name of the organization | Employer identification number |
|---|---|
| Fork Food Lab | 45-4116596 |

**01. Form 990 governing body review (Part VI, line 11)**

The Form 990 was prepared by the organization's accounting firm and reviewed by the
Executive Director, then shared with the Board of Directors prior to its being submitted.

**02. Conflict of interest policy compliance (Part VI, line 12c)**

The organization's board reviews all possible conflicts of interest at least annually and
ensures disclosure and resolution of same as warranted.

**03. CEO, executive director, top management comp (Part VI, line 15a)**

The Executive Director's compensation is reviewed periodically by the Board of Directors
to ensure same is reasonable as compared to other similar organizations taking into
account economic considerations and constraints.

**04. Governing documents, etc., available to public (Part VI, line 19)**

The organization's governing documents are made available to the public upon request.

Client Copy

**For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.**

**Schedule O (Form 990) (Rev. 12-2024)**

EEA

| SCHEDULE R (Form 990) | Related Organizations and Unrelated Partnerships | OMB No. 1545-0047 |
|---|---|---|
| (Rev. December 2024) Department of the Treasury Internal Revenue Service | Complete if the organization answered "Yes" on Form 990, Part IV, line 33, 34, 35b, 36, or 37. **Attach to Form 990.** **Go to** *www.irs.gov/Form990* **for instructions and the latest information.** | **Open to Public Inspection** |

| Name of the organization | Employer identification number |
|---|---|
| Fork Food Lab | 45-4116596 |

**Part I**    **Identification of Disregarded Entities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 33.

| (a) Name, address, and EIN (if applicable) of disregarded entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Total income | (e) End-of-year assets | (f) Direct controlling entity |
|---|---|---|---|---|---|
| (1) | | | | | |
| (2) | | | | | |
| (3) | | | | | |
| (4) | | | | | |
| (5) | | | | | |

**Part II**    **Identification of Related Tax-Exempt Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related tax-exempt organizations during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Exempt Code section | (e) Public charity status (if section 501(c)(3)) | (f) Direct controlling entity | (g) Section 512(b)(13) controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|
| (1) | | | | | | | |
| (2) | | | | | | | |
| (3) | | | | | | | |
| (4) | | | | | | | |
| (5) | | | | | | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.**

**Schedule R (Form 990) (Rev. 12-2024)**

EEA

Schedule R (Form 990) (Rev. 12-2024)   **Fork Food Lab**   45-4116596   Page **2**

**Part III** | **Identification of Related Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related organizations treated as a partnership during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Predominant income (related, unrelated, excluded from tax under sections 512-514) | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproportionate allocations? | | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? | | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Yes | No | | Yes | No | |
| **(1)** Fork Food Hub L  *4000 95-97 Darling Avenue South Portland, ME 04106 | Shared Food Preparation Facility | ME | Ford Food Lab | RELATED | | 8,913,422 | X | | | | X | 81.74 |
| **(2)** | | | | | | | | | | | | |
| **(3)** | | | | | | | | | | | | |
| **(4)** | | | | | | | | | | | | |
| **(5)** | | | | | | | | | | | | |

**Part IV** | **Identification of Related Organizations Taxable as a Corporation or Trust.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related organizations treated as a corporation or trust during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Type of entity (C corp, S corp, or trust) | (f) Share of total income | (g) Share of end-of-year assets | (h) Percentage ownership | (i) Section 512(b)(13) controlled entity? | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Yes | No |
| **(1)** | | | | | | | | | |
| **(2)** | | | | | | | | | |
| **(3)** | | | | | | | | | |
| **(4)** | | | | | | | | | |
| **(5)** | | | | | | | | | |

EEA

Schedule R (Form 990) (Rev. 12-2024)

Client Copy

Schedule R (Form 990) (Rev. 12-2024)   **Fork Food Lab**                                                   45-4116596          Page **3**

| **Part V** | **Transactions with Related Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, 35b, or 36. |
|---|---|

**Note:** Complete line 1 if any entity is listed in Parts II, III, or IV of this schedule.

| | | | Yes | No |
|---|---|---|:---:|:---:|
| **1** | During the tax year, did the organization engage in any of the following transactions with one or more related organizations listed in Parts II-IV? | | | |
| **a** | Receipt of **(i)** interest, **(ii)** annuities, **(iii)** royalties, or **(iv)** rent from a controlled entity | **1a** | | X |
| **b** | Gift, grant, or capital contribution to related organization(s) | **1b** | | X |
| **c** | Gift, grant, or capital contribution from related organization(s) | **1c** | | X |
| **d** | Loans or loan guarantees to or for related organization(s) | **1d** | | |
| **e** | Loans or loan guarantees by related organization(s) | **1e** | X | |
| | | | | |
| **f** | Dividends from related organization(s) | **1f** | | X |
| **g** | Sale of assets to related organization(s) | **1g** | | X |
| **h** | Purchase of assets from related organization(s) | **1h** | | X |
| **i** | Exchange of assets with related organization(s) | **1i** | | X |
| **j** | Lease of facilities, equipment, or other assets to related organization(s) | **1j** | | X |
| | | | | |
| **k** | Lease of facilities, equipment, or other assets from related organization(s) | **1k** | X | |
| **l** | Performance of services or membership or fundraising solicitations for related organization(s) | **1l** | | X |
| **m** | Performance of services or membership or fundraising solicitations by related organization(s) | **1m** | | X |
| **n** | Sharing of facilities, equipment, mailing lists, or other assets with related organization(s) | **1n** | | X |
| **o** | Sharing of paid employees with related organization(s) | **1o** | | X |
| | | | | |
| **p** | Reimbursement paid to related organization(s) for expenses | **1p** | | X |
| **q** | Reimbursement paid by related organization(s) for expenses | **1q** | | X |
| | | | | |
| **r** | Other transfer of cash or property to related organization(s) | **1r** | | X |
| **s** | Other transfer of cash or property from related organization(s) | **1s** | | X |

**2** If the answer to any of the above is "Yes," see the instructions for information on who must complete this line, including covered relationships and transaction thresholds.

| **(a)**<br>Name of related organization | **(b)**<br>Transaction type (a-s) | **(c)**<br>Amount involved | **(d)**<br>Method of determining amount involved |
|---|:---:|---:|---|
| **(1)** Fork Food Hub L3C | e | 555,282 | Cost |
| **(2)** Fork Food Hub L3C | k | 308,971 | Cost |
| **(3)** | | | |
| **(4)** | | | |
| **(5)** | | | |
| **(6)** | | | |

EEA                                                                                       Schedule R (Form 990) (Rev. 12-2024)

Schedule R (Form 990) (Rev.12-2024)    **Fork Food Lab**                                                45-4116596              Page **4**

| Part VI | Unrelated Organizations Taxable as a Partnership. Complete if the organization answered "Yes" on Form 990, Part IV, line 37. |
|---|---|

Provide the following information for each entity taxed as a partnership through which the organization conducted more than five percent of its activities (measured by total assets or gross revenue) that was not a related organization. See instructions regarding exclusion for certain investment partnerships.

| (a) Name, address, and EIN of entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Predominant income (related, unrelated, excluded from tax under sections 512-514) | (e) Are all partners section 501(c)(3) organizations? | | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproportionate allocations? | | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? | | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Yes | No | | | Yes | No | | Yes | No | |
| (1) | | | | | | | | | | | | | |
| (2) | | | | | | | | | | | | | |
| (3) | | | | | | | | | | | | | |
| (4) | | | | | | | | | | | | | |
| (5) | | | | | | | | | | | | | |
| (6) | | | | | | | | | | | | | |
| (7) | | | | | | | | | | | | | |
| (8) | | | | | | | | | | | | | |
| (9) | | | | | | | | | | | | | |
| (10) | | | | | | | | | | | | | |
| (11) | | | | | | | | | | | | | |
| (12) | | | | | | | | | | | | | |

EEA                                                                                                      Schedule R (Form 990) (Rev. 12-2024)

Client Copy

| **Part VII** | **Supplemental Information** |
| --- | --- |
| | Provide additional information for responses to questions on Schedule R. See instructions. |

**FORK FOOD LAB**

**UNANIMOUS WRITTEN RESOLUTIONS OF DIRECTORS
ACTING WITHOUT A MEETING**

**APRIL 17, 2026**

The undersigned, being all of the directors (the "**Directors**") of Fork Food Lab (the "**Company**"), a Maine non-profit corporation organized under Title 13-B of the Maine Revised Statutes (the "**Maine Non-Profit Corporation Act**"), and in accordance with the Bylaws of the Company and the Maine Non-Profit Corporation Act, and with the Company having no members, and with a meeting of the Directors having been held on April 17, 2026, hereby adopt and consent to the following actions and resolutions of the Company:

| | |
|---|---|
| **WHEREAS:** | The Directors have reviewed and considered the financial and operating condition of the Company, including the mission of the Company, the historical performance of the Company, its assets, its current and long-term liabilities, the market for its assets, credit market conditions, and macroeconomic conditions impacting the Company, and the Directors being apprised of the efforts to reorganize the Company; and further |
| **WHEREAS:** | The Directors have determined it desirable and in the best interests of the Company, and its charitable mission, its creditors, its start-up and early-stage Maine food business members, and other interested parties, that BCM Advisory Group and Jason Mills be retained as Chief Restructuring Officer for the Company (the "**CRO**") to exclusively oversee and manage, among other things, the reorganization of the Company and the other duties set forth in the engagement letter attached hereto as **Exhibit A**, that the Company enter into that certain Restructuring Support Agreement substantially in the form attached hereto as **Exhibit B** (the "**RSA**"), and that a petition be filed by the Company seeking relief under the provisions of Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and to pursue debtor in possession financing, potential sales of some or all of the Company's assets, and/or a reorganization, each generally in accordance with the RSA or as the CRO may otherwise determine; and further |
| **RESOLVED:** | That the Company, and the CRO on behalf of and in the name of the Company, be and hereby is authorized and empowered to: (a) execute and verify or certify a petition under Chapter 11 of the Bankruptcy Code and to cause the same to be filed in the United States Bankruptcy Court for the District of Maine or any other appropriate bankruptcy court (the "**Bankruptcy Court**") at such time as the Company shall determine and in such form or forms as the Company may approve, and to elect to proceed as |

a debtor and debtor-in-possession under Subchapter V of Chapter 11; and (b) to the extent included as part of the reorganization, to sell, lease, exchange, mortgage, pledge, or otherwise dispose of some, all, or substantially all of the property and assets of the Company, including to the extent any such transaction or series of transactions is covered by 13-B M.R.S.A. § 1001 or any other provision of the Maine Non-Profit Corporation Act; and further

**RESOLVED:**   That the CRO, in his capacity as such, is authorized, on behalf of, and in the name of, the Company, to execute the RSA and to execute and file any and all petitions, schedules, motions, lists, applications, pleadings and other papers, to take any and all such other and further actions which the CRO or the Company's legal counsel may deem necessary or appropriate to file the voluntary petition for relief under chapter 11, and to take and perform any and all further acts and deeds which the CRO deems necessary, proper, and desirable in connection with the chapter 11 case, with a view to the successful prosecution of such case, including, without limitation, seeking authority to borrow under a pre- or post-petition credit facility, to grant liens and other security therefor, to sell assets, and to file and prosecute a plan of reorganization or liquidation, and to open debtor-in-possession bank accounts; and further,

**RESOLVED:**   That the Company, and the CRO on behalf of and in the name of the Company, be and hereby is authorized to retain the law firm of Bernstein, Shur, Sawyer & Nelson, P.A. ("**BSSN**") as general bankruptcy counsel to the Company, in connection with the chapter 11 case if the Company determines that the filing of a voluntary petition for relief is appropriate, and to pay BSSN at its standard hourly rates in connection with its representation of the Company, and to provide BSSN with a retainer in an amount to be agreed upon by BSSN and the Company, and to reimburse BSSN for any actual expenses incurred in connection with its employment by the Company, and that the Company is authorized to retain and compensate such other professionals in addition to BSSN in the chapter 11 case as may be determined by the CRO.

[intentionally left blank; signatures to follow]

**DIRECTORS OF FORK FOOD LAB:**

Date: 4-17-26

_____
Michael Walker

Date: 4-17-26

_____
Thomas Settlemire

Date: _____

_____
Matthew Chin

Date: 4/17/2026

_____
Penny Jordan   Penelope A Jordan

Date: 4/17/2026

_____
John Naylor

Date: 4/17/2026

_____
Maeve McInnis

Date: 4/17/2026

_____
Stephen C. Perruzza

Date: 4/17/2026

_____
Danica 'Rose' Barboza

Date: 4/17/2026

_____
Peter Hall

**Exhibit A**
**CRO Engagement Letter**

# BCM Advisory Group

---

190 Main St., 3rd Floor
Saco, ME 04072
400 The Hill, Suite 1
Portsmouth, NH 03801

Phone: 207-807-9516

February 9, 2026

Michael J. Walker
Fork Food Lab
95 Darling Ave
South Portland, ME 04106

Dear Michael,

Thank you for your interest in BCM Advisory Group ("BCM" or "us" or "we"). We understand that you would like to have a Chief Restructuring Officer ("CRO") appointed to assist with restructuring Fork Food Lab (the "Company"). We understand that the Company will be filing for bankruptcy to restructure its balance sheet. We appreciate the opportunity to work as CRO, and we understand the scope of our work to include but not be limited to the following:

1. We will review the recent historical financial performance (trailing 12-24 months) to gain a preliminary understanding of the financial condition of the Company.

2. We will work with you and other members of the Company to assess the Company's financial health and identify areas for improvement. We will work with you to develop and implement restructuring plans to optimize operations.

3. We will communicate with the board, management and employees to ensure alignment of plans and projections.

4. We will assist in the planning and management of cash. This will include preparation of 13-week cash projections, budget vs actual, and weekly variance analysis. This will assist us in determining the surplus or deficit of cash.

5. We will work with management to prepare projections which will include balance sheet, income statement and statement of cash flow. These will be used to monitor the business results and discuss changes that may be made to the operations of the business.

6. We will review the financial reporting on a monthly basis. We will provide oversight of the financial reporting processes, including monthly income statements, balance sheets and Statements of Cash Flow.

7. We will work with your bankruptcy attorney to prepare financial information that is required for a filing, such as the schedule of financial affairs, monthly operating reports, 13-week cash projections and bankruptcy plan projections.

8. As CRO, we will represent the Company in bankruptcy matters, including 341 hearings and court hearings.

In addition to the above, we are available to assist you with other matters that may arise.

As CRO, we shall exercise commercially reasonable efforts to comply in all material respects with all federal, state, and municipal laws, regulations, and orders relative to the use, operation, and maintenance of the Company and the Company assets. The CRO shall, as soon as reasonably practical, report to you, any material violation of any such law, rule, regulation, or order that comes to its attention.  The CRO shall not be required to make any payment from its own account or incur liability on account thereof.

**Terms:** We bill monthly and track time on an hourly basis using the following standard rates: Principal $300 and Consultants $150 to $175. In order to begin our work, we require a retainer in the amount of **$10,000**. The retainer will be reserved and applied to the final invoice for our work. In addition to consulting charges, we will bill for any expenses associated with this engagement.

This engagement can be terminated by either party, at any time, by written notice. Upon termination of this engagement, the retainer will be applied to the final invoice. Any remaining balance owed to BCM will be paid withing 5 business days. Any remaining retainer balance held by BCM will be paid within 5 business days.

If the terms of this letter are acceptable to you, please indicate by signing in the space provided below.  We look forward to working with you on this engagement.

Sincerely,

Jason J. Mills, CFE

By: _____
    Jason J. Mills, CFE, duly authorized
    And not individually

**Agreement to Terms of Consulting Engagement**

Seen and Agreed:

Michael J. Walker, duly authorized

By: _____          Date:_____

**Exhibit B**
**RSA**

*Execution Version*

## RESTRUCTURING SUPPORT AGREEMENT

This RESTRUCTURING SUPPORT AGREEMENT (this "**Agreement**") is entered into by and among: (i) Fork Food Lab ("**Lab**"), (ii) The Elmina B. Sewall Foundation ("**Sewall**"), (iii) Cooperative Fund of the Northeast, Inc. ("**CFNE**"); and (iv) Fork Food Incubator L3C ("**Incubator**"). Each of the foregoing is individually referred to herein as a "**Party**" and, collectively, as the "**Parties**."

**WHEREAS**, Lab is a non-profit food business incubator and shared commercial manufacturing and processing facility that provides members with, among other things, workspace, equipment, resources, and access to locally sourced ingredients (the "**Member Business**"); and

**WHEREAS**, Lab is the recipient of, among other grants, a certain grant award entitled "The Second Harvest Partnership: Adding Value to Upcycled and Surplus Produce" from the United States Department of Agriculture dated on or about October 30, 2023, which is a mid-scale value chain that will include institutional buyers, farmers, processors, logistics, and small, socially disadvantaged farms to open new markets for produce through value-added food processing and other services (the "**USDA Grant Business**"); and

**WHEREAS**, on or about March 28, 2019, Machias Savings Bank ("**MSB**") made a loan in the original amount of **$50,000.00** to Lab to finance certain working capital (the "**MSB Loan**"); and

**WHEREAS**, on or about July 27, 2022, Sewall made to Lab that certain loan in the original principal amount of **$750,000.00** (the "**Sewall Loan**"); and

**WHEREAS**, on or about July 27, 2022, CFNE made to Lab that certain loan in the original principal amount of **$750,000.00** (the "**CFNE Loan**"), and the balance of the CFNE Loan as of April 17, 2026, was **$777,468.51**; and

**WHEREAS**, the CFNE Loan and the Sewall Loan are each secured by a security interest in substantially all of the assets of Lab related to the Member Business, including accounts, receivable, inventory, machinery, equipment, and other business assets (the "**Collateral**"), <u>provided</u> that pursuant to a subordination and intercreditor agreement between CFNE, Sewall, and MSB, (a) CFNE holds a first priority security interest in the Collateral except accounts receivable in which it has a second priority interest; (b) Sewell holds a second priority security interest in the Collateral except accounts receivable in which it has a third priority security interest, and (c) MSB holds a first priority security interest in accounts receivable only and no other Collateral.

**WHEREAS**, certain investors, creditors, and others interested in the preservation of Lab's mission have formed Incubator for the purpose of funding the reorganization of Lab and acquiring certain assets of Lab in the Chapter 11 Case (defined below), with the overall goal of achieving long-term sustainability for the Member Business and, to the extent possible, the USDA Grant Business; and

*Execution Version*

WHEREAS, the Parties have engaged in good faith, arms' length negotiations and agreed to enter into certain restructuring transactions in accordance with the terms and conditions set forth in this Agreement and to facilitate the orderly restructuring of Lab, the Member Business, and the USDA Grant Business (collectively, the "**Restructuring**"); and

WHEREAS, the Restructuring shall be implemented through the commencement by Lab of a voluntary case (the "**Chapter 11 Case**") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Maine (the "**Bankruptcy Court**").

**NOW, THEREFORE**, in consideration of the promises and mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      Effective Date.  This Agreement shall be effective upon the date on which counterpart signature pages to this Agreement shall have been executed and delivered by all Parties (the "**Effective Date**").

2.      Bankruptcy Process and Milestones.

(a)      Commencement of the Chapter 11 Case. Lab agrees that, as soon as reasonably practicable, but in no event later than April 20, 2026 (the date on which the filing of the Chapter 11 Case actually occurs, the "**Petition Date**"), Lab shall file with the Bankruptcy Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and any and all other documents necessary to commence the Chapter 11 Case and prosecute such case consistent with this Agreement.

(b)      Debtor-in-Possession Loan.  To facilitate the Restructuring and help fund the Chapter 11 Case, Incubator shall provide a loan to Lab in the maximum principal amount of **$250,000.00**, which shall be disbursed to Lab (i) in the sum of **$50,000.00** prior to the Petition Date (and no later than five (5) business day after the Effective Date) and used exclusively for legal fees and costs of Bernstein Shur Sawyer & Nelson, PA ("**BSSN**") as counsel to Lab (the "**Initial Restructuring Loan**"), and (ii) the balance of **$200,000.00** after the Petition Date (the "**Post-Petition Restructuring Loan**" and, together with the Initial Restructuring Loan, the "**DIP Loan**").  The DIP Loan shall accrue interest at the WSJ Prime interest rate on amounts actually advanced.

(c)      DIP Motion and Certain Case Milestones.  On the Petition Date, Lab shall file a motion (the "**DIP Motion**") for approval of the DIP Loan (on an interim and then final basis, subject to applicable notice periods).  The DIP Motion shall seek approval to include the Initial Restructuring Loan with the Post-Petition Restructuring Loan within the approved DIP Loan upon entry of a final order granting the DIP Motion.  The DIP Loan shall also be subject to the following terms and conditions:

(i)      It shall be a milestone under this Agreement that the Bankruptcy Court has approved the DIP Loan on an interim basis no later than ten (10) business days after the Petition Date and on a final basis no later than thirty (30) days after the Petition Date.

Page **2** of **9**

*Execution Version*

(ii)     The DIP Loan shall: (i) be secured by a lien on the Collateral (subject to the Carve Out (defined below)) that is junior to all other valid and perfected liens on the Collateral as existed on the Petition Date; (ii) be subject to entry into commercially reasonable loan documents for a loan of such type (to the extent such documents are required by Incubator); and (iii) mature and be payable in full on the Confirmation Date (defined below).

(iii)     Following the Petition Date and until the DIP Loan is approved on a final basis, Lab shall only disburse proceeds of the DIP Loan for payment of expenses necessary to avoid immediate and irreparable harm.

(d)     Plan and Related Restructuring Terms.  Within seven (7) business days of the Petition Date, Lab shall file a plan of reorganization (the "**Plan**"), which Plan shall be in form and substance reasonably satisfactory to Incubator, and which shall include the following transactions to implement the Restructuring:

(i)     Under the Plan, Incubator shall acquire the Member Business from Lab (including all assets of Lab used therein, including the Collateral) upon the following terms and conditions: (1) assumption of the CFNE Loan upon the terms set forth in **Exhibit A** hereto, with the first payment due to CFNE upon the Effective Date of the Plan (the "**Plan Effective Date**"); (2) conversion of the Sewall Loan into preferred equity in Incubator upon the terms set forth in **Exhibit B** hereto; (3) assignment and assumption of all member contracts to Incubator; (4) entry into a new commercial lease agreement for 95-97 Darling Avenue, South Portland, Maine, with Darling Fork, LLC; (5) payment in full of the MSB Loan upon the Confirmation Date; and (6) the acquired assets shall be free and clear of all liens, claims, and encumbrances other than the liens and assumed claim of CFNE (unless otherwise agreed in writing by Incubator in its sole discretion); and

(ii)     Lab shall continue to exist and retain the USDA Grant Business upon confirmation of the Plan (the "**Confirmation Date**"), provided that upon the Confirmation Date, in addition to any other terms and conditions that Incubator may require in its reasonable discretion: (1) Lab's current board of directors will be modified to reflect a slate of directors acceptable to Incubator; (2) the USDA Grant Business shall be free and clear of all liens, claims, and encumbrances to the maximum extent permitted by applicable law; and (3) Lab shall enter into a sub-lease with Incubator for certain space in 95-97 Darling Avenue, South Portland, Maine.

(e)     Chief Restructuring Officer.  Lab shall continue to retain Jason Mills as its chief restructuring officer (the "**CRO**") for the Chapter 11 Case.  The CRO shall have, among other powers and duties, full authority to execute documents on behalf of Lab, negotiate and approve terms of the Plan, and prepare and file operating reports and other customary reporting documents in the Chapter 11 Case.

(f)     Cash Collateral.  Provided that Lab is not in default of this Agreement, and subject to approval of the Bankruptcy Court upon the filing of the DIP Motion, CFNE,

Page **3** of **9**

*Execution Version*

Sewall, and Incubator shall consent to the use of cash collateral during the Chapter 11 Case on an interim and then final basis in accordance with the Federal Rules of Bankruptcy Procedure and Local Rules, provided, however, that such consent shall be subject to and conditioned upon entry of interim and final orders by the Bankruptcy Court authorizing the use of cash collateral in accordance with the terms and conditions set forth below (the "**Cash Collateral Terms**") (provided that the Parties acknowledge that certain of the Cash Collateral Terms are subject to entry of a final order and shall not be approved by the Bankruptcy Court on an interim basis in accordance with the applicable bankruptcy rules):

(i)     Allowance of the claims of CFNE and Sewall against Lab as of the Petition Date, without offset and defenses, and without the need for the CFNE and Sewall to file proofs of claim;

(ii)    Stipulation as to priority, validity, and extent of the liens granted to the CFNE and Sewall as of the Petition Date;

(iii)   Waiver of all claims and causes of action by Lab or its estate against CFNE and Sewall;

(iv)    Obligation to provide weekly variance reporting on the Thursday of each week for the prior Sunday to Saturday period;

(v)     Budget approved by CFNE, Sewall, and Incubator (the "**Budget**"), and obligation of Lab to use cash collateral (including proceeds of the DIP Loan) only to pay expenses in accordance with the Budget, provided that the aggregate actual disbursements by Lab shall not exceed 110% of the aggregate forecasted disbursements in the budget; and

(vi)    Carve out for payment of Subchapter V Trustee fees (**$2,500.00**), professional fees incurred after the Petition Date by BSSN (**$50,000.00**), and the CRO fees (**$30,000.00**) (collectively, the "**Carve Out**"), which Carve Out shall be senior to all liens and claims (including, without limitation, Sewall's liens, CFNE's liens, adequate protection liens, super-priority administrative expense claims, administrative expense claims, and all liens securing the DIP Loan), provided that the balance remaining under the Carve Out shall be reduced dollar-for-dollar by amounts funded under the Budget to the applicable Carve Out professional with cash collateral and DIP Loan proceeds (as set forth in more detail in the applicable cash collateral orders).

(g)     Participation in the Chapter 11 Case.  Nothing in this Agreement shall limit Sewall's or CFNE's rights to: (i) appear and participate as a party in interest in any matter to be adjudicated in the Chapter 11 Case, so long as such appearance and positions advocated in connection therewith are not inconsistent with this Agreement; or (ii) enforce any of their rights under this Agreement.

3.     Forbearance. During the period commencing on the Effective Date and ending on the termination of this Agreement in accordance with its terms, CFNE and Sewall hereby agree to forbear from the exercise of any rights or remedies they may have under or related to the loans set

*Execution Version*

forth above or any other document and under applicable United States or foreign law or otherwise, in each case, with respect to any of the existing or anticipated defaults or events of default.

4.    <u>Extensions</u>. Any of the deadlines or milestones set forth in this Agreement may be extended by mutual agreement of the Parties, in writing.

5.    <u>Events of Default and Remedies</u>.

(a)    "**Event of Default**" shall mean any of the following:

(i)    The breach in any material respect by any Party of any of the undertakings, representations, warranties, or covenants set forth herein which remains uncured for a period of five (5) business days after the receipt of written notice of such breach;

(ii)    The breach of any deadline or milestone set forth in this Agreement, unless such deadline is extended with the written consent of the Lenders, without any cure right;

(iii)    An examiner with expanded powers or a trustee shall have been appointed in the Chapter 11 Case (other than the Subchapter V Trustee) without the prior written consent of the Lenders, without any cure right;

(iv)    Dismissal of the Chapter 11 Case or conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code without the prior written consent of the Lenders, without any cure right; or

(v)    Lab defaults pursuant to the terms and conditions of any cash collateral order entered by the Court or cash collateral agreement or stipulation approved by the Court unless said default is timely cured in accordance with the applicable cash collateral order, agreement, or stipulation.

(b)    <u>Effect of Event of Default</u>. Upon the occurrence of an Event of Default, Lab shall have no further right to request or receive draws on the DIP Loan or to use cash collateral.  Any Party shall have the right to seek relief from the bankruptcy court, including on an expedited or emergency basis, and to object to any request for relief.

6.    <u>Amendments and Waivers</u>. Except as otherwise expressly set forth herein, this Agreement may not be waived, modified, amended, or supplemented except in a writing signed by all Parties.

7.    <u>Governing Law; Jurisdiction; Waiver of Jury Trial</u>.

(a)    This Agreement shall be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the Bankruptcy Code and the laws of the State of Maine, without giving effect to the conflict of laws principles thereof.

(b)    Each of the Parties irrevocably agrees that any legal action, suit, or

*Execution Version*

proceeding (each, a "**Proceeding**") arising out of or relating to this Agreement brought by any Party or its successors or assigns shall be brought and determined in any federal or state court in the State of Maine, provided that if the Chapter 11 Case is commenced, any Proceeding must be brought in the Bankruptcy Court.

(c)     EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY).

8.     Prior Negotiations; Entire Agreement.  This Agreement constitutes the entire agreement of the Parties, and supersedes all other prior negotiations, with respect to the subject matter hereof and thereof.

9.     Counterparts.  This Agreement may be executed in several counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same agreement.  Execution copies of this Agreement delivered by facsimile or PDF shall be deemed to be an original for the purposes of this paragraph.

10.     Settlement Discussions.  This Agreement is part of a proposed settlement of matters that could otherwise be the subject of litigation among the Parties. Pursuant to Rule 408 of the Federal Rules of Evidence, any applicable state rules of evidence, and any other applicable law, foreign or domestic, this Agreement and all negotiations relating thereto shall not be admissible into evidence in any Proceeding other than a Proceeding to enforce its terms.

11.     No Solicitation; Adequate Information.  This Agreement is not and shall not be deemed to be a solicitation for votes for the acceptance of a plan for the purposes of the Bankruptcy Code or otherwise or a solicitation to tender or exchange any securities.

*[SIGNATURE PAGE FOLLOWS]*

*Execution Version*

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above.

**Fork Food Lab**

Date:_____

By: _____

Name: Jason Mills

Title: Chief Restructuring Officer

**The Elmina B. Sewall Foundation**

Date:_____

By: _____

Name: _____

Title: _____

**Cooperative Fund of the Northeast, Inc.**

Date:_____

By: _____

Name: _____

Title: _____

**Fork Food Incubator L3C**

Date:_____

By: _____

Name: Justin Alfond

Title: Authorized Party

*Execution Version*

**Exhibit A**

**Restructured CFNE Loan Terms**

| Term | CFNE |
|---|---|
| **Assumed Principal Amount** | $350,000 |
| **Security Interest** | First priority security interest in the Collateral including accounts receivable. |
| **Payment Terms** | - $50,000 payable on the Plan Effective Date;<br>- 15-year amortization starting on the Plan Effective Date, with a balloon payment of all outstanding balance at the end of month 60 (the "**Maturity Date**"); provided, however, that there shall be an automatic 5-year extension of the Maturity Date if the CFNE Loan is not in default (provided that the 15-year amortization schedule and monthly payment amounts shall not be changed if such extension occurs);<br>- 5.5% annual interest;<br>- Monthly interest only payments for months 1-12, with the first payment due thirty days after the Plan Effective Date; and<br>- On or before the Plan Effective Date, Incubator shall fund a segregated account, to be held by Incubator, with $50,000, which shall be used exclusively to fund the CFNE Loan obligations. |
| **Documentation** | Subject to mutually acceptable assumption and loan modification documentation. |

Page **8** of **9**

*Execution Version*

**Exhibit B**

**Restructured Sewall Terms**

Upon the Plan Effective Date, the Sewall Loan shall be converted into $300,000 of preferred equity in Incubator. This shall be subject to mutually acceptable terms and documentation; provided, however, that Sewall shall have the right to appoint a representative to attend all meetings of Incubator's board of directors in an observer capacity.

United States Bankruptcy Court

District of Maine

In re:  Fork Food Lab                                          Case No.

                                                              Chapter   11

            Debtor(s)

### Verification of Creditor Matrix

The above-named Debtor(s) hereby verify that the attached list of creditors is true and correct to the best of their knowledge.

Date: 4/26/26

_____
Signature of Individual signing on behalf of debtor

Chief Restructuring Officer
Position or relationship to debtor

207 Permaculture L3C
22 Taylors Trail
New Gloucester, ME 04260

3B's Catering
250 White Road
Bowdoinham, ME 04008

Acadia Insurance
One Acadia Commons
P.O. Box 9010
Westbrook, ME 04098-5010

Agri-Cycle Energy
500 Southborough Drive
Suite 106
South Portland, ME 04106

Amira Cuisine and Bakery
2 Laffin Drive
Westbrook, ME 04092

Asa Gorman Builders
586 Sawyer Street
South Portland, ME 04106

Asa Gorman Builders
c/o Kelly McDonald, Esq.
Murry Plumb & Murry
75 Pearl St.
P.O. Box 9785
Portland, ME 04104

Battambang Bistro
15 Cole Road
Windham, ME 04062

Barkada, LLC
18 Leeward Passage
North Yarmouth, ME 04097

Barry Larry's, LLC
30 Lydia Lane
Unit B88
South Portland, ME 04106


Boothbay Harbor Dog Treats
P.O. Box 113
Boothbay Harbor, ME 04538


Black Salt, LLC
11 Lincoln Street
Brunswick, ME 04011


Bliss Caterers
17  Allen Ave
Auburn, ME 04210


Bread and Blossom
95 Darling Ave
South Portland, ME 0410


Bub's Home Kitchen, LLC
28 Monument Square
Portland, ME 04101


Butter + Kale, LLC
1 Joy Place
2C
Portland, ME 04102


Cantilever Coffee Company LLC
529 Bay Road
Bowdoinham, ME 04008


Central Maine Power
P.O. Box 847810
Boston, MA 02284-7810


CFNE
c/o Dorian Gregory
P.O. Box 970

Watertown, MA 02471


CG Foods International Inc.
4 Freedom Road
Scarborough, ME 04074


Chad's Desert Island Hot Sauce
95 Darling Ave
South Portland, ME 04106


Choma Zone LLC
62 Portland Road
Suite 25A
Kennebunk, ME 04043


Cintas
88 Spiller Drive
Westbrook, ME 04092


City of South Portland
P.O. Box 9422
South Portland, ME 04106


Corinne Tompkins
41 Fox Street
Portland, ME 04101


Danica Barboza
411 Congress Street
Portland, ME 04102


Darling Fork, LLC
143 Vaughn St.
Portland, ME 04102


Dept. of Agriculture, Conservation and Forestry
28 State House Station
Attn: Jessica Routhier
Augusta, ME 04333-0028

Earle W. Noyes & Sons
127 Oxford Street
Portland, ME 04101


Eduardo's Brazilian Grill One Corp
13 West Presumpscot Street
Unit 2
Portland, ME 04103


Elan Financial Services
P.O. Box 790408
St. Louis, MO 6379-0408


Elmina B. Sewall Foundation
c/o Thomas Mitchell
15 Main Street
Suite 230
Freeport, ME 04032


Elmina B. Sewall Foundation
c/o Thomas Mitchell
P.O. Box 1319
Portland, ME 04104


Empanada Club
95 Darling Ave
South Portland, ME 04106


ERC Specialists, LLC
560 E. Timpanogos Circle
Orem, UT 84097


Farms for Food Equity
21 Wells Road
Cape Elizabeth, ME 04107


FirstLight Fiber
340 Cumberland Ave
Portland, ME 04101


Fork Food Hub L3C

95 Darling Ave
South Portland, ME 04106


Fork Food Incubator
c/o Kellie Fisher
Drummond Woodsum
84 Marginal Way, Suite 600
Portland, ME 04101


Forq LLC
143 Vaughan Street
Portland, ME 04102


Foundation House
160 Preble Street
Portland, ME 04101


GlacierGrid
1516 Folsom Street
San Francisco, CA 94103


Global Village LLC
2 Delorem Drive
Yarmouth, ME 04096


Google LLC
1600 Ampitheatre Pkwy
Moutain View, CA 94043


Grand-K Group, LLC
95 Darling Ave
South Portland, ME 04106


Great Wave Sushi
11 Lagueux Lane
East Waterboro, ME 04030


Gunnar's Icelandic Hot Dogs
242 Veranda Street
Unit 1
Portland, ME 04103

Hank & Artie's LLC
59 Pamela Road
Portland, ME 04103


Happy Traps
51 Ingersoll Drive
Portland, ME 04103


Healthy Communities of the Capital Area
105 Second Street
Suite 2B
Hallowell, ME 04347


Hoodz of Southern Maine
24 Bridgton Road
Suite 3
Westbrook, ME  04062


Hobart Service
19 Evergreen Dr
Portland, ME 04103


Internal Revenue Services
Attn: Centralized Insolvency Operation
P.O. Box 7346
Philadelphia, PA 19101-7346


Ironclad Eats LLC
86 Cape Road
Raymond, ME 04071


Jensen Baird
c/o Kevin Crosman
P.O Box 4510
Portland, ME 04112-4510


John Naylor
45 Fleetwood Street
Portland, ME 04102

John Wasileski
OceanView at Falmouth
20 Blueberry Lane
Falmouth, ME 04105


Jolly Goose Provisions LLC
43 Berwick Street
Portland, ME 04030


June Sleeper
264 Smith Road
Windham, ME 04062


Khmer Maine Food Co.
15 Casco Street
Portland, ME 04101


Kili Organics LLC
500 Forest Avenue
Suite 8
Portland, ME 04101


Kimchi Beyond Compare LLC
49 Deer Run Drive
Cumberland, ME 04021


Knowles Mechanical Inc.
1145 Lewiston Road
Litchfield, ME 04350


Lady Shuckers, LLC
6 Pitt Street
Apt 24
Portland, ME 04103


LB Mini-Mart
235 Vaughan St
Portland, ME 04102


Little Bee Thai

95 Darling Ave
South Portland, ME 04106


Liu Bian Tan LLC
95 Darling Ave
South Portland, ME 04106


LK Planning LLC
Attn: Donna Larson Kane
30 Spear Avenue
South Portland, ME 04106


Long Creek Watershed Management District
35 Main Street
Suite 3
Windham, ME 04062


Machias Savings Bank
4 Center Street
Machias, ME 04654


Mad Flavor
120 Elm Street
West Newfield, ME 04095


Maeve McInnis
13 Rust Road
Gorham, ME 04038


Mailchimp
c/o The Rocket Science Group, LLC
405 N. Angier Ave, NE
Atlanta, GA 30308


Maine Cheese Company
165 Birches Road
Waldo, ME 04915


Maine Farm and Sea Cooperative
P.O. Box 8714
Portland, ME 04104

Maine Standard Biofuels
51 Ingersoll Drive
Portland, ME 04103


Maine Revenue Services
51 Commerce Dr
Augusta, ME 04333


Maine Revenue Services
c/o John Burke, Esq.
6 State House Station
Augusta, ME 04333


Maine Foodscapes
22 Montgomery Road
Windham, ME 04062-4137


Maine Organic Farmers & Gardeners Association
P.O. Box 170
Unity, ME 04988


Maine Salt Farm
53 Beach Bluff Terrace
Cape Elizabeth, ME 04107


Maine Sauce and Provisions LLC
P.O. Box 1298
Damariscotta, ME 04543


Mangia Kitchen LLC
19 Western Ave
Apt 101
Biddeford, ME 04005


Mar Mar Noodle Company
11 Arcadia Street
Portland, ME 04103


Marsh & McLennon Agency

1945 Congress Street
Building A
Portland, ME 04102


Mash Mechanical Inc.
3 Southgrate Road
Suite 9
Scarborough, ME 04074


Matt & Jake Big Brother Big Sister Cooking
95 Darling Ave
South Portland, ME 04106


Matt Chin
39 Glen Road
Yarmouth, ME 04096


Michael Walker
109 Lincoln Street
Saco, ME 04072


Modern Pest Services
100 Pleasant Street
Brunswick, ME 04011


Niyat Catering
95 Darling Ave
South Portland, ME 04106


Nomadic Kitchen
95 Darling Ave
South Portland, ME 04106


North Spore
921 Riverside Street
Portland, ME 04103


North Star Leasing
P.O. Box 4505
Burlington, VT 05406-4505

Norway Savings
P.O. Box 347
Norway, ME 04268


Norway Savings
c/o Adam J. Shub, Esq.
P.O. Box 9546
Portland, ME 04101


Office of U.S. Attorney
100 Middle Street
East Tower, 6th Floor
Portland, ME 04101


Office of U.S. Trustee
537 Congress Street
Suite 300
Portland, ME 04101


Oga Suya
95 Darling Ave
South Portland, ME 04106


Other People's Pizza
95 Darling Ave
South Portland, ME 04106


Paychex
126 Merrow Road
Auburn, ME 04210


Penelope Jordan
21 Wells Road
Cape Elizabeth, ME 04107


Peter J. Hall, CPA LLC
439 Preble Street
South Portland, ME 04106


Pine State Fire and Security

81 County Road
Suite 20
Westbrook, ME 04092


Pine Tree Equipment Services
Ken Fengler Landscaping
6 Mitchell Road
Scarborough, ME 04074


Plucked Fresh Salsa
987 Riverside Street
Portland, ME 04103


Pocketalk, Inc.
445 Sherman Ave
Suite 120
Palo Alto, CA 94306


Portland Paper Products, LLC
12 Rice Street
Unit 4
Portland, ME 04103


Portland Water District
225 Douglass Street
Portland, ME 04104


Provision ME
95 Darling Ave
South Portland, ME 04106


Quick Drain Services
20600 Emerald Parkway
Cleveland, OH 44135


Red Magnolia BBQ
606 Congress Street
Portland, ME 04101


Restaurant Equipment Paradise
465 Park Ave

East Hartford, CT 06108


Ryan Owens
P.O. Box 104
Raymond, ME 04071


Salvatore's Hoagie Shop
448 Forest Ave
Portland, ME 04101


Schilly's
P.O. Box 104
Raymond, ME 04071


Scott & Jon's d/b/a Demers Food Group
P.O. Box 1537
Auburn, ME 04211


See 'Em's Bakes
95 Darling Ave
South Portland, ME 04106


Slide Street, LLC
160b Guthrie Lane
Suite 5
Brentwood, CA 94513


Smokin Dads BBQ, Inc
25 Tasker Street
Saco, ME 04072


SoFi Credit Card
P.O. Box 981075
Boston, MA 02298-1075


Solstice Dried Goods LLC
95 Darling Ave
South Portland, ME 04106


SOTF, LLC d/b/a Instawares

222 Chastain Meadows Ct.
Suite 200
Kennesaw, GA 30144


Spark Applied Efficiency
1 Colchester Drive
South Portland, ME 04106


Stephen C. Perruzza
1251 Congress Street
Portland, ME 04102


Sunnyfield Baking Co.
95 Darling Ave
South Portland, ME 04106


Sweet Pea's Plant Powered Meals & More
3 Baywoods Drive
Scarborough, ME 04074


Sweets N' Treats
95 Darling Ave
South Portland, ME 04106


Sysco Northern New England
36 Thomas Drive
Westbrook, ME 04092


T.D. Bank, N.A.
4140 Church Road
Mount Laurel, NJ 08054


The Food Corridor
P.O. Box 1314
Fort Collins, CO 80522


The Greeks From Peaks
95 Darling Ave
South Portland, ME 04106

The Hungry Gains
12 Fremont Street
Sanford, ME 04073


The Kitchen Network, LLC
78 Boston Rock Road
Melrose, MA 02176


The Milk Bottle
95 Darling Ave
South Portland, ME 04106


The Portland Board
95 Darling Ave
South Portland, ME 04106


The Whole Almond, LLC
145 New Meadows Road
A33
Bath, ME 04530


Thomas Settlemire
722 Granite Street
Yarmouth, ME 04096


Three Words Catering, LLC
95 Darling Ave
South Portland, ME 04106


TimePayment Corp.
200 Summit Drive
Suite 100
Burlington, MA 01803


Tonycakes
95 Darling Ave
South Portland, ME 04106


Touch of Green Food and Bev LLC
270 Eastern Promenade

Unit #1
Portland, ME 04101


Troiano Waste Services, Inc.
P.O. Box 3541
Portland, ME 04104


Truckin Pizza
25 Preble Street
Portland, ME 04101


Union Bagel Co.
147 Cumberland Avenue
Portland, ME 04101


Union Insurance Company
One Acadia Commons
P.O. Box 9010
Westbrook, ME 04098-5010


U.S. Small Business Administration
409 Third Street SW
7th Floor
Washington, DC 20416


Unitil
376 Industrial Parkway
Portland, ME 04103


Vy Banh Mi
44 Pacer Way
Scarborough, ME 04074


Walden Mutual Bank
66 North Main Street
Concord, NH 03301


Wayside Food Programs
P.O. Box 1278
Portland, ME 04104

Webstaurant
2205 Old Philadelphia Pike
Lancaster, PA 17602


Western MA Food Processing Center
324 Wells Street
Greenfield, MA 01301


Wholesome B Bakery
95 Darling Ave
South Portland, ME 04106


William Seretta
60 Oakland Ave
Yarmouth, ME 04096


Willie C & Sons Landscaping, LLC
601 Lewiston Road
Topsham, ME 04086


Young Nonna
95 Darling Ave
South Portland, ME 04106