**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **FORK FOOD LAB,**[1] | **Case No. ~~26~~ 26-20104** |
| **Debtor.** | |

**INTERIM ORDER: (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING; (II) AUTHORIZING USE OF CASH COLLATERAL; (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS; (IV) GRANTING ADEQUATE PROTECTION; AND (V) SCHEDULING A FINAL HEARING**

This matter is before this Court upon the above-referenced motion [Dkt. No. —2] (the "**Motion**") filed by the Debtor[2] requesting entry of an interim order (this "**Interim Order**"), authorizing the interim relief set forth in the Motion; and due and sufficient notice under the circumstances of the Motion and the interim hearing on the Motion (the "**Interim Hearing**") having been provided by the Debtor; and the Interim Hearing having been held; and upon consideration of the Motion and the record at the Interim Hearing; and it appearing that approval of the Interim Order is necessary to avoid immediate and irreparable harm pending the Final Hearing and is otherwise fair and reasonable and in the best interests of the Debtor, its estate, and parties in interest, and is essential for the continued preservation of the Debtor's business; and after due deliberation and consideration and good and sufficient cause appearing therefor;

**IT IS HEREBY FOUND THAT**:

A.      On the Petition Date, the Debtor commenced this chapter 11 case in the

---

[1] The last four digits of Fork Food Lab's federal taxpayer identification number are 6596, and its principal place of business is 95-97 Darling Avenue, South Portland, Maine.

[2] Capitalized terms used, but not otherwise defined in this Interim Order, shall have the meaning ascribed to such terms in the Motion.

Bankruptcy Court.

B.      The Debtor is continuing to manage its property as debtor in possession.

C.      The Bankruptcy Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      The Debtor's business has an immediate need to borrow under the DIP Loan and to use Cash Collateral in order to have adequate liquidity to provide for, among other things, the orderly continuation of the operation of its business, to maintain business relationships with vendors, suppliers, and members, to make payroll, and to satisfy other working capital and operational, financial, and general corporate needs.  The access of the Debtor to sufficient working capital and liquidity through the incurrence of new indebtedness from borrowed money and other financial accommodations and use of such funds is vital to the preservation and maintenance of the going concern value of the Debtor and to the success of this case.

E.      Failure to grant the relief in this Interim Order would result in immediate and irreparable harm to the Debtor, its estate, and its creditors.

F.      The terms of the DIP Loan were negotiated in good faith and at arm's length, and the DIP Loan Documents shall not be affected by any subsequent reversal, modification, vacatur, or amendment of this Interim Order or any other order, as provided in § 364(e) of the Bankruptcy Code.  Each of the Debtor and the DIP Lender has acted in good faith in, as applicable, negotiating, consenting to, and in agreeing to provide the postpetition financing arrangements contemplated by this Interim Order and the DIP Loan Documents, and the reliance of each of foregoing parties on the assurances referred to above is in good faith.

G.      The terms of the DIP Loan are the best available under the circumstances, reflect

the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

H.       Good cause exists to authorize the Debtor and the DIP Lender to enter into the DIP Loan and the DIP Loan Documents, including, but not limited to, because entry of this Interim Order will minimize disruption of the Debtor as a "going concern," and the DIP Loan is in the best interest of the Debtor, its creditors, and its estate.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**:

1.       **Disposition**.  The Motion is **GRANTED** on an interim basis as set forth in this Interim Order.

2.       **Cash Collateral and Budget**.  Subject to the terms of this Interim Order, the Debtor is authorized to use Cash Collateral (including proceeds of the DIP Loan) in accordance with and to the extent set forth in the Budget (attached hereto as **Exhibit A**) on an interim basis, with recognition that the timing of revenue and expenses may be different (including falling in different weeks) than as projected in the Budget.

3.       **Immediate Effect**. Notwithstanding any provision of the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules to the contrary, this Interim Order shall take effect immediately upon entry on the docket, and shall remain in effect until such time as otherwise ordered by this Court pursuant to the procedures set forth herein (with such period from the Petition Date through the end of the effectiveness of this Interim Order being referred to herein as the "**Interim Cash Collateral Period**").

4.       **Permitted Variance**.  The Debtor's use of Cash Collateral, including the proceeds advanced by the DIP Lender under the DIP Loan, during the Interim Cash Collateral Period shall be limited to One Hundred Ten Percent (110%) of the aggregate expenditures as set

forth in the Budget (including any subsequent or modified Budget), with recognition that the timing of revenue and expenses may be different than as projected.

5. **Authorization to Borrow**.  Upon entry of this Interim Order, the Debtor is deemed to have, and is authorized and empowered to: (i) enter into the DIP Loan Documents; and (ii) borrow on an interim basis from the DIP Lender under the DIP Loan, solely up to the amounts set forth in the applicable weeks in the Budget constituting the Interim Cash Collateral Period, subject to the terms and conditions of this Interim Order and the DIP Loan Documents. In addition, subject to the Carve Out, all DIP Obligations incurred under this Interim Order shall be treated as an allowed superpriority administrative expense claim under § 364(c)(1) of the Code (the "**Superpriority DIP Claim**").

6. **DIP Liens**.  Subject to the Carve Out, all obligations under the DIP Loan (the "**DIP Obligations**") shall be secured by liens (the "**DIP Liens**") on all of the Debtor's assets, including all assets that secured the Debtor's obligations to the DIP Lender as of the Petition Date, other than Avoidance Actions and the proceeds thereof (collectively, the "**DIP Collateral**").  The DIP Liens shall be junior in priority to all valid and perfected liens of the Prepetition Lenders[3] on the DIP Collateral.  Upon entry of the Interim Order, the DIP Liens shall be valid, binding, enforceable, and fully perfected liens on the DIP Collateral.   No Cash Collateral or DIP Loan proceeds may be used to investigate or prosecute any challenge or claim related to the DIP Lender or its respective claim or liens against the Debtor or the estate.

7. **Additional DIP Loan and Cash Collateral Terms and Conditions**.

a. **Reporting**. On or before the Thursday of each week, the Debtor shall

---

[3] As used in this Interim Order, "**Prepetition Lenders**" shall include Machias Savings Bank, Sewall Foundation, Cooperative Fund of the Northeast, and Norway Savings Bank.

deliver to the DIP Lender, ~~MSB, CFNE, and Sewall~~the Prepetition Lenders, the U.S. Trustee, and the Subchapter V trustee a line-by-line variance report that compares actual cash receipts and disbursements of the Debtor with corresponding amounts provided for in the Budget in the prior week.

b.     **Adequate Protection**.  Pursuant to this Interim Order, and subject in all respects to the Carve Out, the Prepetition Lenders shall be provided with adequate protection to the extent of any diminution in the value of each Prepetition Lender's respective interests in Cash Collateral from and after the Petition Date as a result of the use of Cash Collateral after the Petition Date (such established diminution in value after the Petition Date for each's interests, the "**Adequate Protection Obligations**"), liens on all assets of the Debtor and its estate (other than the proceeds of Avoidance Actions), all which shall exist in the same validity and order of priority that existed as of the Petition Date among the Prepetition Lenders (the "**Adequate Protection Liens**").

c.     **Continuing Liens**.  In addition to the Adequate Protection Liens to the Prepetition Lenders, pursuant to § 552 of the Bankruptcy Code, subject to the Carve Out, the Prepetition Lenders shall continue to hold liens, rights as assignee, and/or security interests in any and all proceeds, products, offspring, or profits acquired by the Debtor after the Petition Date to the same extent and validity, and in the same priority, as the Prepetition Lenders held liens, rights as assignee, and/or security interests in the Debtor's assets as of the Petition Date (the "**Continuing Liens**").

d.     **Automatic Perfection**.  The DIP Liens, Adequate Protection Liens, and Continuing Liens shall be valid, binding, enforceable, and fully perfected without the necessity of the execution, filing, or recording of security agreements, pledge agreements, financing

statements, or other agreements.

e.  **Events of Default**.  The following shall be events of default (each, an "**Event of Default**") as to the DIP Loan and use of Cash Collateral unless waived by the DIP Lender in writing in its sole discretion: (i) failure by the Debtor to pay principal, interest, or any other amounts when due under the DIP Loan; (ii) the chapter 11 case is dismissed or converted to a chapter 7 case, or a trustee or examiner with expanded powers is appointed, without the prior written consent of the Prepetition Lenders; (iii) the Debtor uses the proceeds of the DIP Loan or Cash Collateral in violation of the Budget (subject to timing and other permitted variances); (iv) the failure to satisfy any of the Case Milestones (as defined below) without the written consent of the DIP Lender; and (v) the Debtor grants or consents to any lien equal or senior to the liens of the DIP Lender~~; or (vi) the occurrence of any other Event of Default under the RSA that remains uncured for a period of five (5) business days after the receipt of written notice of such breach~~.

f.  **Remedies**. If any Event of Default shall have occurred and be continuing, the DIP Lender may, by written notice to the Court, the Debtor, the U.S. Trustee, and the Subchapter V trustee, take any or all of the following actions: (1) declare the DIP Loan to be suspended or terminated, whereupon the DIP Loan shall be suspended or terminated and the DIP Lender shall have no obligation to make further advances; (2) declare the DIP Obligations to be immediately due and payable, without presentment, demand, protest, or (except as provided above) other notice of any kind, all of which are hereby expressly waived by the Debtor; or (3) terminate the Debtor's ability to use the proceeds of the DIP Loan and Cash Collateral, subject to the Carve Out (provided that the Debtor and any other party shall have the right to seek relief from the Bankruptcy Court to continue the use of Cash Collateral, including on an expedited or

emergency basis, with all objections to such relief reserved).

g.      **Milestones**.   Unless otherwise agreed by the DIP Lender, the Debtor agrees to comply with the following milestones ~~as set forth in the RSA (collectively, (~~the "**Case Milestones**")~~.~~:

(i)    The DIP Loan shall be approved on a final basis no later than thirty (30) days after the Petition Date; and

(ii)   Within seven (7) business days of the Petition Date, the Debtor shall file a plan of reorganization.

h.      **Limited Waiver of Automatic Stay**.   The automatic stay provisions of § 362 of the Bankruptcy Code are modified exclusively as to the DIP Lender only to the extent necessary to enable it to implement the provisions of this Interim Order.

i.      **Binding Nature of Adequate Protection Liens**.   No obligation, payment, transfer or grant of security under this Interim Order shall be: (a) stayed, restrained, voidable, avoidable or recoverable under any section of the Bankruptcy Code or any other applicable law; or (b) subject to avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross-claim, defense or any other challenge under any section of the Bankruptcy Code or any other applicable law by any person or entity.

8.      **Carve Out**.   Notwithstanding anything to the contrary in the Interim Order, all liens and claims, including, without limitation, the DIP Liens granted herein and the DIP Obligations and the liens and claims of the Prepetition Lenders, shall be subject and subordinate to all claims for (i) allowed professional fees after the Petition Date incurred by proposed counsel for the Debtor (Bernstein Shur Sawyer & Nelson, PA) in the amount of **$50,000**, (ii) the

fees of BCM Advisory Group as chief restructuring officer in the amount of **$30,000**; and (iii) allowed compensation to the Subchapter V trustee in the amount of **$2,500** (the items described above are referred to herein collectively as the "**Carve Out**").  Further, in accordance with the Carve Out, once a payment is disbursed to the applicable recipient under the Budget (the "**Budgeted Professional Fee Payments**"), such Budgeted Professional Fee Payment shall constitute a dollar for dollar payment toward satisfying the Carve Out and shall no longer be subject to any liens, claims, or interests of the DIP Lender, or the Prepetition Lenders, or any other party, and shall be held by such recipient exclusively for the payment of allowed compensation of such recipient in this case, provided that in the event the Budgeted Professional Fee Payments exceed the amount of allowed compensation as to the applicable recipient, such unused fund (the "**Returned Professional Fees**") shall be returned by the applicable recipient to the Debtor's estate and, upon return to the Debtor, the liens of the Prepetition Lenders and the DIP Lender shall automatically reattach to such Returned Professional Fees in the same priority as existed at the time of payment.

9.      **Survival**. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any orders which may be entered: (i) confirming any chapter 11 plan in the chapter 11 case; (ii) converting the chapter 11 case to a case under chapter 7 of the Bankruptcy Code; (iii) to the extent authorized by applicable law, dismissing the chapter 11 case; (iv) withdrawing of the reference of the chapter 11 case from the Court; or (v) providing for abstention from handling or retaining of jurisdiction of the chapter 11 case in the Court.  The terms and provisions of this Interim Order shall: (a) continue in these or any other superseding cases under the Bankruptcy Code; (b) be valid and binding on all parties in interest, including, without limitation, any official committee appointed in the case, any chapter 11 trustee,

examiner, or chapter 7 trustee, or other fiduciary appointed in the chapter 11 case or any successor case and their respective successors and assigns; and (c) continue, notwithstanding any dismissal of the Debtor's bankruptcy case.

10. **Final Hearing and Related Deadlines**.

a. The Final Hearing on the Motion shall take place before this Court **on** ~~May 21~~, **2026, at** ~~__:__ __.m.~~**1:30 p.m.**

b. The Debtor shall file and serve a proposed Final Order and revised Budget, if needed, **on or before** ~~~~**May 13, 2026**.

c. Objections, if any, to the relief requested in the Motion being granted on a final basis shall be filed with this Court and served upon counsel for the Debtor, the DIP Lender, the Prepetition Lenders, the Subchapter V trustee, all parties appearing in the case, and the Office of the United States Trustee, **on or before** ~~~~**May 19, 2026**.

11. **Immediate Effect**. This Interim Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable effective immediately.

12. **NOTICE REGARDING FINAL ORDER: In the Final Order, the Debtor, on behalf of itself and its estate, may agree to the certain provisions otherwise restricted by LBR 4001-2: (a) acknowledging the amount of the Prepetition Lenders' claims; (b) acknowledging the validity, perfection, extent, and non-avoidability of the Prepetition Lenders' liens; (c) waiving the right to surcharge the Prepetition Lenders' collateral under § 506(c) of the Bankruptcy Code; (d) waiving the right to assert the doctrine of marshaling as to the Prepetition Lenders; and (e) waiving the right to assert the "equities of the case" doctrine as to the Prepetition Lenders under § 552(b) of the Bankruptcy Code.**

Date: _____

_____

Peter G. Cary
United States Bankruptcy Judge
District of Maine

**Exhibit A**
**Budget**

| Summary report: Litera Compare for Word 11.11.0.158 Document comparison done on 4/23/2026 6:16:45 AM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://work.bssn.com/worksite_active/21797253/2 - Fork - Motion to Use Cash Collateral and Borrow  - As Filed Interim Order.docx | |
| **Modified DMS:** iw://work.bssn.com/worksite_active/21797253/3 - Fork - Motion to Use Cash Collateral and Borrow  - Revised interim order 4-22-2026.docx | |
| **Changes:** | |
| Add | 22 |
| Delete | 10 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 32 |